UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

RICHARD RUIZ, *individually and behalf all others
similarly situated*,

                      Plaintiff,

                  v.

STATE OF NEW YORK MORTGAGE AGENCY,
SCHILLER, KNAPP, LEFKOWITZ, AND
HERTZEL, LLP, and M&T BANK
CORPORATION,

                      Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-1837 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Richard Ruiz commenced the above action on behalf of himself and others

similarly situated on April 3, 2025 against Defendants State of New York Mortgage Agency

("SONYMA"), Schiller, Knapp, Lefkowitz, and Hertzel LLP ("Schiller Law"), and M&T Bank

Corporation ("M&T Bank") (collectively, "Defendants").[1]  (Compl., Docket Entry No. 1.)

Plaintiff filed an Amended Complaint on July 2, 2025 asserting ten causes of action claiming that

Defendants conspired to defraud him of surplus money and award themselves inflated compound

interest from the foreclosure sale of his property located at 529 Alabama Avenue, Brooklyn,

New York, Block: 3820, Lot: 103 (the "Subject Property").  (Am. Compl. ¶ 52, Docket Entry

No. 45.)  In the Amended Complaint, Plaintiff asserts five causes of action against all Defendants

---

[1]  Plaintiff initially also named John and Jane Doe Investors 1–10 and John and Jane Does 1–10 as Defendants but dismissed them from the action on June 11, 2025.  (Notice of Voluntary Dismissal, Docket Entry No. 40; Order dated June 12, 2025.)

for violations of: (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), (*id.* ¶¶ 77–84); (2) New York General Business Law § 349 ("GBL § 349"), (*id.* ¶¶ 85–90); (3) the Racketeering Influence and Corrupt Organizations Practices Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"), (*id.* ¶¶ 95–127); (4) *prima facie* tort, (*id.* ¶¶ 153–57); and (5) conversion, (*id.* ¶¶ 158–64).  In addition, Plaintiff alleges four claims individually against Schiller Law for violations of (1) New York Judiciary Law § 487 ("Judiciary Law § 487"), (*id.* ¶¶ 91–94); (2) negligence, (*id.* ¶¶ 128–38); (3) gross negligence, (*id.* ¶¶ 139–42); and (4) legal malpractice, (*id.* ¶¶ 143–47).  Plaintiff also alleges a claim individually against SONYMA for unjust enrichment, (*id.* ¶¶ 148–52).  Plaintiff seeks against all Defendants a declaratory judgment, injunctive relief enjoining Defendants from continuing their alleged unlawful debt collection activities, actual and compensatory damages, treble damages pursuant to RICO and Judiciary Law § 487, statutory damages pursuant to the FDCPA, disbursements, costs, and attorneys' fees.  (*Id.* at 41–42.)

M&T Bank and SONYMA move separately to dismiss the Amended Complaint[2] and Plaintiff opposes the motions.[3]  For the reasons discussed below, the Court grants Defendants'

---

[2]  Schiller Law has not appeared or responded to this action.  On May 6, 2025, Plaintiff filed Proof of Service on Schiller Law stating he served Schiller Law by delivering the Complaint and a Summons to the New York Secretary of State.  (Summons, Docket Entry No. 19.)  On May 8, 2025, the Court ordered Plaintiff to mail the Complaint and Summons to Schiller Law's address listed for service of process on the Secretary of State's website and directed Plaintiff's counsel to file a declaration on or before May 15, 2025 demonstrating compliance with the order.  (Order dated May 8, 2025.)  On May 9, 2025, Plaintiff filed an Affidavit of Service stating he served Schiller Law at the address provided on the Secretary of State's website.  (Aff. of Service, Docket Entry No. 20.)

[3]  (M&T Bank's Mot. to Dismiss ("M&T Bank's Mot."), Docket Entry No. 51; M&T Bank's Mem. in Supp. of Mot. to Dismiss ("M&T Bank's Mem."), appended to M&T Bank's Mot., Docket Entry No. 51-4; M&T Bank's Reply in Supp. of Mem. ("M&T Bank's Reply"),

motions and dismisses the Amended Complaint.  In addition, the Court *sua sponte* dismisses the claims against Schiller Law.

## I.   Background

### a.   The parties

Plaintiff is a New York State resident and a "consumer" as defined by the FDCPA.  (Am. Compl. ¶¶ 21, 78.)  SONYMA is a New York entity that conducts business in the State of New York, is a "debt collector" as defined by the FDCPA, (*id.* ¶¶ 22, 78), and acts as a mortgage noteholder, (*id.* ¶ 26).  M&T Bank is a New York corporation that conducts business in New York, "regularly attempts to collect debts alleged to be due to another," (*id.* ¶ 23), and acts as a mortgage servicer that manages the loans, (*id.* ¶ 27).[4]  Schiller Law is a limited liability partnership located and doing business in New York State.  (*Id.* ¶ 24.)  SONYMA retained Schiller Law as a law firm to "collect on consumer debt that [SONYMA] [ ] claims to own" and "[p]ursuant to that retention, Schiller [Law] files and maintains actions in New York State courts seeking debt collection" for amounts owed on mortgage agreements.  (*Id.* ¶¶ 24, 28.)

---

Docket Entry No. 53; SONYMA's Mot. to Dismiss ("SONYMA's Mot."), Docket Entry No. 54; SONYMA's Mem. in Supp. of Mot. to Dismiss ("SONYMA's Mem."), appended to SONYMA's Mot., Docket Entry No. 54-1; Pl.'s Opp'n; SONYMA's Reply in Supp. of Mem. ("SONYMA's Reply"), Docket Entry No. 56; Pl.'s Opp'n to Mots. to Dismiss ("Pl.'s Opp'n"), Docket Entry No. 57.)

[4]  M&T Bank argues Plaintiff incorrectly sued M&T Bank Corporation, the parent company, instead of M&T Bank, the "national banking association" with whom Plaintiff had a mortgage account.  (M&T Bank's Mem. 1, 26.)  In its motion papers, M&T Bank Corporation calls itself "M&T Bank," (*id.* at 1), and nevertheless presents arguments on behalf of M&T Bank.  (*See generally* M&T Bank's Mem.)  The Court uses M&T Bank to refer to M&T Bank Corporation and/or M&T Bank and discusses the parties' arguments regarding whether Plaintiff named the correct defendant *infra* in Section II.d.iii.

### b.  Plaintiff's allegations

Plaintiff alleges Defendants "collectively engaged in a fraudulent scheme to purposefully miscalculate interest due and owing on residential mortgages in order to obtain vastly inflated payouts from court-ordered foreclosure sales." (*Id.* ¶ 11.)  In support, Plaintiff contends that Defendants "submit[ed] deceptive documentation to New York Courts" that they expected would be "blindly approve[d]" and "prematurely utilize[d] the final monetary judgment award to the noteholder, [SONYMA], awarded in a court's [j]udgment of [f]oreclosure and [s]ale . . . in calculating improper compound interest accrued on a mortgage loan before the [judgment of foreclosure and sale] was actually entered." (*Id.* ¶¶ 12–13.)  By using the "already-determined [judgment of foreclosure and sale] amount as the basis for the calculation of interest . . . instead . . . of the mortgage principal," (*id.* ¶ 14), Defendants received excess money from the state court-ordered foreclosure sale of the Subject Property and "deprived Plaintiff . . . of [his] legal right to be awarded surplus monies."[5]  (*Id.* ¶¶ 11, 12.)

---

[5]  In the Amended Complaint, Plaintiff seeks certification of this action as a collective action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself, individually, and the following class:

> (a) all persons sued, or creditors of such persons or lienholders of liens against the property that was the subject of the foreclosure action in question, in state-court lawsuits related to the collection of debt owed on a mortgage loan document secured by real property, (b) that were sold at auction, (c) in which Schiller [Law] was identified as counsel for the plaintiff in the complaint, (d) within six years of the date of the filing of this action.  Excluded from the [c]lass are the officers and directors of any Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest, at all relevant times.

(Am. Compl. ¶ 70.)

### i.   The foreclosure action

On February 24, 2000, Plaintiff took out a mortgage on the Subject Property with non-party CFS Bank.  (Mortgage Agreement, annexed to the Declaration of Beth L. Kaufman ("Kaufman Decl."),[6] Docket Entry No. 54-3; *see* Am. Compl. ¶ 53.)[7]  On February 24, 2000, CFS Bank assigned the mortgage to SONYMA.  (*Id*. ¶ 54.)  On February 4, 2015, SONYMA commenced a foreclosure action under Index No. 501233/2015 against Plaintiff in the Supreme Court of the State of New York, County of Kings (the "State Court Action").[8]  (Am. Compl. ¶

---

[6]  The Kaufman Decl. annexed additional relevant State Court Action documents: Mortgage Summons & Compl., annexed as Ex. 5, Docket Entry No. 54-7; Am. Notice of Mot. for Default J., annexed as Ex. 7, Docket Entry No. 54-9; Order of Reference, annexed as Ex. 8, Docket Entry No. 54-10; J. of Foreclosure and Sale, annexed as Ex. 9, Docket Entry No. 54-11; Notice of Claim to Surplus Monies, annexed as Ex. 10, Docket Entry No. 54-12; Order of Reference for Surplus Proceedings, annexed as Ex. 11, Docket Entry No. 54-13; Order granting Order of Reference for Surplus Proceedings, annexed as Ex. 12, Docket Entry No. 54-14; Pl.'s Mot. to Confirm, annexed as Ex. 14, Docket Entry No. 54-16; Referee's R&R on Surplus Proceedings, annexed as Ex. 15, Docket Entry No. 54-17; Pl.'s Mot. to Confirm Referee's R&R on Surplus Proceeding, annexed as Ex. 16, Docket Entry No. 54-18; Order Confirming Referee's R&R on Surplus Proceedings, annexed as Ex. 17, Docket Entry No. 54-19; Pl.'s Am. Mot. to Confirm Referee's R&R on Surplus Proceedings, annexed as Ex. 18, Docket Entry No. 54-20; Decision and Order filed Oct. 31, 2023, annexed as Ex. 19, Docket Entry No. 54-21.

[7]  The Court notes that while Plaintiff pleads the date of the mortgage was May 23, 2000, (Am. Compl. ¶ 53), the submitted mortgage agreement is dated February 24, 2000, (Mortgage Agreement).

[8]  The Court takes judicial notice of the documents filed in the State Court Action.  *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) (internal quotation marks omitted))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact

5

55; Mortgage Summons and Compl.)  Through its attorney Schiller Law, SONYMA filed an order for a default judgment and an Order of Reference in the State Court Action on October 17, 2016.[9]  (Am. Notice of Mot. for Default J.; *see* Am. Compl. ¶ 56.)  On March 3, 2017, the state court granted default judgment and an Order of Reference.  (Am. Compl. ¶ 57; Order of Reference.)  On May 11, 2017, the court-appointed referee submitted a Referee's Report of Amount Due which set forth the amounts due and owing on the mortgage to be $71,308.77.  (Am. Compl. ¶ 58.)  SONYMA filed a notice of motion for Judgment of Foreclosure and Sale in the State Court Action on May 11, 2017, attaching a proposed order that Plaintiff alleges was drafted by Schiller Law that is "either identical or substantially similar" to the Judgment of Foreclosure and Sale subsequently entered in the State Court Action.  (*Id.* ¶ 59.)  On October 12, 2017, the state court entered a Judgment of Foreclosure and Sale for $77,308.77 due on the mortgage on the Subject Property ("Judgment of Foreclosure and Sale").  (*Id.* ¶ 60; J. of Foreclosure and Sale.)

---

of such litigation and related filings" (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record,' including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

[9]  The Court notes that Plaintiff incorrectly pleads that SONYMA filed an order for a default judgment and an Order of Reference on September 22, 2015, (Am. Compl. ¶ 56), but SONYMA's submitted order for a default judgment and an Order of Reference shows that the correct filing date is October 17, 2016, (Am. Notice of Mot. for Default J.).

6

On April 11, 2018, the Subject Property was sold via public auction for $320,000 to a non-party.[10] (Am. Compl. ¶ 61.) The referee filed a Referee's Report of Sale for the State Court Action ("Referee's Report of Sale") on April 23, 2018[11] that utilized the final judgment amount awarded in the Judgment of Foreclosure and Sale, $71,308.77, to compute the interest owed to Defendants and awarded SONYMA a total of $84,026.62, including interest and costs. (*Id.* ¶¶ 63–65, 69.) Referee's Report of Sale, No. 501233/2015. A total surplus of $219,731.49 was deposited with the referee. Referee's Report of Sale 13, No. 501233/2015.

Relevant figures from the Referee's Report of Sale are: (1) $71,308.77, the "[a]mount due [to] Plaintiff, as per Judgment [of Foreclosure and Sale], as of March 31, 2017"; (2) $2,666.76, the "[i]nterest on Judgment [of Foreclosure and Sale] through date of entry at contract rate (7.000%) [195 days]"; and (3) $3,182.52, the "[i]nterest on Judgment [of Foreclosure and Sale] through date of entry through transfer at 9.0% [181 days]." *Id.* (Am. Compl. ¶ 64.) The final judgment amount of $71,308.77 in the Referee's Report of Sale includes interest at the mortgage rate up until March 31, 2017, and it computes interest at the mortgage interest rate using the judgment amount as its basis instead of the mortgage principal. (Am. Compl. ¶¶ 64, 66.) Plaintiff alleges that Defendants submitted a proposed order with improper calculations that "prematurely utilize the final judgment amount to compute the pre-judgment interest accrued,"

---

[10]  The Court notes that Plaintiff incorrectly pleads January 11, 2018 as the date of sale for the Subject Property, (Am. Compl. ¶ 61), but the State Court Action documents, such as the Notice of Claim to Surplus Monies, states the date of sale for the Subject Property was April 11, 2018, (*see* Notice of Claim to Surplus Monies).

[11]  The Court notes that Plaintiff incorrectly pleads that the state court filed the Referee's Report of Sale on April 11, 2018, (Am. Compl. ¶ 63), but the Referee's Report of Sale shows it was filed on April 23, 2018, *see* Referee's Report of Sale, No. 501233/2015 (N.Y. Sup. Ct. filed Apr. 23, 2018), Docket Entry No. 102.

and therefore awarded SONYMA a total of $84,026.62 instead of $83.426.84, Plaintiff's alleged correct total amount, for a surplus of $599.78.  (*Id*. ¶¶ 67–69.)

On September 6, 2018, Plaintiff filed a Notice of Claim of Surplus Monies from the foreclosure sale of the Subject Property and an Order of Reference in Surplus Monies Proceedings.  (Notice of Claim to Surplus Monies; Order of Reference in Surplus Monies Proceedings.)  On January 28, 2019, the state court issued an Order of Reference in Surplus Monies Proceedings confirming the Referee's Report of Sale and appointing a referee to determine the disbursement of the "surplus monies" to the respective parties ("Confirmation Order").  (Order granting Order of Reference in Surplus Monies Proceedings.)  On January 31, 2020, Plaintiff filed a motion to confirm the state court's order confirming the Referee's Report of Sale and appointing a new referee to disburse "surplus monies."  (Pl.'s Mot. to Confirm.)  On July 21, 2022, the appointed referee filed a Report and Recommendation on the surplus proceedings, (Referee's R&R on Surplus Proceedings), and Plaintiff moved to confirm the Report and Recommendation, (Pl.'s Mot. to Confirm Referee's R&R on Surplus Proceedings). On September 30, 2022, the state court confirmed the Referee's Report and Recommendation on the surplus proceedings.  (Order Confirming Referee's R&R on Surplus Proceedings.)  Plaintiff filed an amended motion to confirm the Referee's Report and Recommendation on August 15, 2023, upon the direction of the New York State Comptroller Office who stated such a motion and subsequent order was necessary for the Comptroller Office to review and ultimately approve the disbursement.  (Pl.'s Am. Mot. to Confirm Referee's R&R on Surplus Proceedings.)  Ltr. from Comptroller, annexed as Ex. E to Pl.'s Am. Mot. to Confirm Referee's R&R on Surplus Proceedings, No. 501233/2015 (N.Y. Sup. Ct. filed Aug. 15, 2023), Docket Entry No. 137.  On

8

October 31, 2023, the state court granted Plaintiff's amended motion and directed the disbursement of surplus funds.  (Decision and Order filed Oct. 31, 2023.)

### ii.    FDCPA allegations

Plaintiff contends that Defendants violated the FDCPA "by making false and misleading representations, using deceptive means and engaging in unfair and abusive practices," including: (1) filing "fraudulent and misleading" motions and documents in the State Court Action against Plaintiff containing interest calculations that illegally inflated the money due and owed to Defendants; (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants; and (3) collecting money "incidental to the principal obligations under mortgage loan agreements without being expressly authorized by the original mortgage loan agreement to do so."  (Am. Compl. ¶ 82.)

### iii.    GBL § 349 allegations

To support her claim under GBL § 349, Plaintiff asserts the same facts as his FDCPA claim to support his claim under GBL § 349.  (*See id.* ¶¶ 85, 89; *compare id.* ¶ 89 to *id.* ¶ 82.) Plaintiff alleges that "Defendants' acts and omissions are directed at consumers" and are "deceptive, misleading and fraudulent" including the acts of (1) filing "fraudulent and misleading" motions and documents in the State Court Action containing interest calculations that illegally inflated the money due and owed to Defendants, and (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants.  (*Id.* ¶¶ 89–90.)

9

### iv.   The RICO allegations

Plaintiff first alleges that Defendants were a RICO enterprise, the purpose of which was to "secure judgments of foreclosure and sale through fraudulent means and to use those judgments to extract money" from Plaintiff and class members.  (Am. Compl. ¶¶ 98–102.) Second, Plaintiff alleges that Defendants engaged in a pattern of racketeering activity to "defraud and obtain money or property by means of false or fraudulent pretenses and representations" by: (i) "[p]roducing and filing fraudulent motions for a judgment of foreclosure and sale;" (ii) "[p]roducing and filing fraudulent [r]eferee [r]eports of [s]ale;" (iii) "[u]sing fraudulent, deceptive and misleading [r]eferee [r]eports of [s]ale to obtain [j]udgments of [f]oreclosure and [s]ale against Plaintiff and [c]lass members under false pretenses;" (iv) "[u]sing fraudulently obtained judgments of foreclosure and sale to steal surplus monies from Plaintiff and [c]lass members;" and (v) "[u]sing fraudulent conduct to report sales that are consistently lower in price than the bid at auction depriving [ ] Plaintiff and [c]lass members of surplus monies."  (*Id.* ¶ 104.)  Third, in furtherance of this goal, Plaintiff also alleges that the Defendants filed false filings in the State Court Action on May 11, 2017 and April 11, 2018, "falsely claiming that [SONYMA] is entitled to illegally computed compound interest."  (*Id.* ¶ 105.)  Plaintiff also alleges that Defendants have used these "deceptive court filings with every [judgment of foreclosure and sale] that they have fraudulently obtained" to further the fraudulent scheme and take money and property from Plaintiff "by reasons of false pretenses and representations."  (*Id.* ¶ 107.)  Fourth, Plaintiff alleges that Defendants engaged in racketeering activity by "us[ing] wires and the mail to receive the unlawfully obtained monies," constituting wire fraud as defined by 18 U.S.C. § 1343.  (*Id.* ¶ 108.)  Fifth, Plaintiff alleges that, as a result, he has been "deprived of due process and [ ] had [a Judgment of Foreclosure and Sale] entered against [him] which

10

[has] been used to extract money from [him] by selling [him] [the Subject] [P]roperty." (*Id.* ¶ 116.)

### v.   Judiciary Law § 487 allegations

To support his claim under Judiciary Law § 487 against Schiller Law, Plaintiff asserts the same allegations as his FDCPA and GBL § 349 claims, but also alleges Schiller acted with the "intent to deceive consumers and multiple New York courts." (*Id.* ¶¶ 91, 93; *compare id.* ¶ 93 to *id.* ¶ 82 and *id.* ¶ 89.)

### vi.   Negligence, gross negligence, and legal malpractice allegations

Plaintiff asserts negligence, gross negligence, and legal malpractice claims against Schiller Law based on the same underlying allegations. (*Id.* ¶¶ 128–47.) In support of his negligence claim, Plaintiff alleges Schiller Law "instructs its attorneys and employees to calculate interest with the fraudulent method" and "use proposed orders and referee reports of sale with a miscalculated judgment amount." (*Id.* ¶¶ 131–32.) In support of his gross negligence claim, Plaintiff alleges Schiller Law's "failure to follow the basic and necessary protocol for the calculations in the referee reports of sale manifested a reckless and intentional breach of its duty of care and a complete disregard for the rights of the Plaintiff." (*Id.* ¶ 140.) In support of his legal malpractice claim, Plaintiff alleges Schiller Law "negligently and recklessly filed fraudulent referee reports of sale on behalf of [SONYMA]." (*Id.* ¶ 144.) For all three claims of negligence, gross negligence, and legal malpractice, Plaintiff argues that Schiller Law "failed to take available basic and necessary steps to properly report sales of the foreclosed properties, resulting in sales that are lower in price than the bid amount at auction." (*Id.* ¶¶ 134, 141, 145.)

11

### vii.   Unjust enrichment, *prima facie* tort, and conversion allegations

Plaintiff asserts an unjust enrichment claim against SONYMA and *prima facie* tort and conversion claims against Defendants for his loss of surplus money.  (*Id.* ¶¶ 148–64.)  First, Plaintiff asserts an unjust enrichment claim against SONYMA based on its receipt of $599.78 more than it was legally entitled "through Defendants' fraudulent interest calculations."  (*Id.* ¶ 149.)  Second, Plaintiff asserts a *prima facie* tort claim against Defendants for "intentionally [seeking] to reduce and/or eliminate the surplus monies rightfully owed to Plaintiff."  (*Id.* ¶ 154.) Third, Plaintiff asserts a conversion claim against Defendants for "intentionally, and without authority, assum[ing] or exercis[ing] control over the surplus monies from the foreclosure auction and sale of the Subject Property," thus "interfer[ing] with Plaintiff's possessory right and vested interest in the surplus funds from the sale."  (*Id.* ¶¶ 161–62.)

## II.   Discussion

### a.   Standard of review

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113).  Courts must "accept the complaint's material

allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

### b. The Court has subject matter jurisdiction because this action is not barred by the *Rooker-Feldman* doctrine

Defendants move to dismiss the action for lack of subject matter jurisdiction and argue the action is barred by the *Rooker-Feldman* doctrine which precludes federal courts from

13

reviewing state court judgments.  (SONYMA's Mem. 11–12; M&T Bank's Mem. 15–17.)  *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486–87 (1983) ("[A] United States [d]istrict [c]ourt has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923).  For the reasons explained below, the Court has subject matter jurisdiction over Plaintiff's claims and denies Defendants' motion to dismiss based on this ground.

Defendants argue that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims because Plaintiff lost in state court and "asks the Court to effectively modify the state court judgment by enjoining Defendants to recalculate the interest."  (M&T Bank's Mem. 16; *see* SONYMA's Mem. 12.)  In support, Defendants argue that Plaintiff complains of injuries allegedly caused by the state court judgments with "the crux of his allegations being the Defendants' alleged misrepresentations to the state court reached in the [Judgment of Foreclosure and Sale] . . . which was used to calculate the interest shown in the [Referee's] Report and Sale.  (SONYMA's Mem. 12; *see* M&T Bank's Mem. 16.)  M&T Bank argues that "even where Plaintiff is not explicitly asking the Court to overturn the State Court [Action] judgment," the injuries he pleads were caused by the illegally inflated interest calculations "would necessarily require th[e] Court to decide the [Judgment of Foreclosure and Sale] was improperly issued."  (M&T Bank's Reply 5.)

Plaintiff argues that all of his claims are "wholly independent" of the Judgment of Foreclosure and Sale and do not seek to overturn it.  (Pl.'s Opp'n 10.)  First, Plaintiff argues that he has not met the second prong of the *Rooker-Feldman* doctrine because there is no causal link between the Judgment of Foreclosure and Sale and his injury since Plaintiff's injury was "merely ratified by the [state] court" rather than caused by it.  (*Id.* at 11; *see id.* at 11–14.)  Second, Plaintiff alleges that the unlawfully computed interest occurred during the post-auction stage of

14

the litigation with "little to no judicial oversight." (*Id.* at 11–12.)  Third, Plaintiff contends that his injuries were caused by the "fraudulent calculations of interest in the final stages of foreclosure proceedings — not the underlying Judgment of Foreclosure and Sale" that were then "ratified by the court without any contemporaneous judicial review." (*Id.* at 12.)  Fourth, Plaintiff contends that the Court can consider his claims without assessing the validity of the Judgment of Foreclosure and Sale, and damages for fraud are not barred by *Rooker-Feldman*, and therefore the third prong is not met. (*Id.* at 15–16.)  Finally, Plaintiff argues the relief sought would not invalidate the Judgment of Foreclosure and Sale, nor does he "seek a judgment overturning, invalidating, or vacating the underlying state court judgments." (*Id.* at 13–14.)

In *Rooker*, 263 U.S. at 415–16, and *Feldman*, 460 U.S. at 482–84, the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state court decision.  *Feldman*, 460 U.S. at 482–84; *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 283–84)).  "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of*

15

*Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see also Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" (alteration in original) (quoting *Exxon Mobil Corp.*, 544 U.S. at 283)).

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck*, 773 F.3d at 426 (alterations in original) (quoting *Hoblock*, 422 F.3d at 85); *see also Binder v. Cap. One Bank, N.A.*, No. 25-1201, 2025 WL 3751871, at *1 (2d Cir. Dec. 29, 2025) (summary order) (affirming *Rooker-Feldman* doctrine barred appellant's claims because it required the court to "review and reject[]" the state court's determination (quoting *Vossbrinck*, 773 F.3d at 426)); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (affirming that review was barred pursuant to the *Rooker-Feldman* doctrine because "correcting [the] loan balance as found by the state court" in the foreclosure judgment would invite rejection of the state court's judgment); *Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 609 (2d Cir. 2020) (outlining the *Rooker-Feldman* test); *Ahchouch v. Lakeview Loan Servicing, LLC*, No. 25-CV-93, 2025 WL 70136, at *2 (S.D.N.Y. Jan. 10, 2025) ("[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." (alteration in original) (quoting *Brooks v. Aiden 0821 Cap. LLC*, No. 19-CV-6823, 2020 WL 4614323, at *3 (E.D.N.Y. July 22, 2020))); *In re Ditech Holding Corp.*, No. 19-BR-10412, 2022 WL 1750997, at *12 (Bankr. S.D.N.Y. May 28, 2022) (dismissing claims because "the [c]ourt would be required to look behind the judgment and determine

16

whether the . . . [s]tate [c]ourt [f]oreclosure [j]udgment is the product of alleged fraud"); *In re Allard*, No. 18-BR-14092, 2019 WL 4593854, at \*3 n.2 (Bankr. S.D.N.Y. Sep. 20, 2019) (noting that a debtor "tried unsuccessfully several times to get th[e] [c]ourt . . . to modify the state court foreclosure judgment, reducing the interest award . . . [b]ut the *Rooker-Feldman* doctrine does not permit th[e] [c]ourt to do so"); *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (dismissing adversary complaint under the *Rooker-Feldman* doctrine seeking to reverse the state court foreclosure judgment).

"Although 'all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive.'" *Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). The Second Circuit has acknowledged that plaintiffs may "purport to complain of injury by individuals in reality complain of injury by state-court judgments," and therefore the Circuit "developed the following formula to help guide our inquiry: 'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 88).

Plaintiff's claims are not barred by the *Rooker-Feldman* doctrine because (1) Plaintiff's injuries were not caused by the state court judgment, and (2) Plaintiff's requests for relief do not seek to set aside the Judgment of Foreclosure and Sale or the Confirmation Order, and therefore, the second and third prongs of *Rooker-Feldman* are not met. *See Dorce*, 2 F.4th at 104 (finding plaintiffs' claims were not barred by *Rooker-Feldman* because plaintiffs only sought damages for

injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment).

As an initial matter, Plaintiff satisfies the first and fourth *Rooker-Feldman* prongs: the federal-court plaintiff lost in the state court, and the state court rendered judgment with the Judgment of Foreclosure and Sale on October 12, 2017 before this action was brought in federal court.[12]  First, Plaintiff lost in the State Court Action which resulted in the Judgment of Foreclosure and Sale and Confirmation Order.  *See id.* at 103 (finding the first prong satisfied by a "property owner who loses his or her interest in the property through an *in rem* foreclosure proceeding in state court").  Second, Plaintiff filed this action on April 3, 2025, approximately seven and a half years after the Judgment of Foreclosure and Sale and over six years after the Confirmation Order were filed and entered in the State Court Action.  *See id.* at 102 (finding state court foreclosure judgments rendered prior to commencement of the federal action satisfied the fourth prong).

However, regarding the second factor, Plaintiff's injuries were not caused by the state court judgment, but instead, Defendants' alleged fraud, and as to the third factor, the asserted claims do not invite federal review and rejection of the Judgment of Foreclosure and Sale and the Confirmation Order.  Accordingly, Plaintiff's requests for relief do not seek to set aside the Judgment of Foreclosure and Sale and Confirmation Order, and as a result, the second and third *Rooker-Feldman* prongs are not satisfied.  *See id.* at 104 (permitting claims for compensatory damages for injury caused by the defendant's misconduct in procuring a state court judgment); *Lindow v. Argent Mortg. Co.*, No. 23-CV-8860, 2024 WL 4665181, at *6 (E.D.N.Y. Nov. 4,

---

[12]  Plaintiff does not dispute that the first and fourth prongs are met.  (*See* Pl.'s Opp'n 10–15 (discussing only the second and third prongs).)

2024) ("[T]he second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." (quoting *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sep. 28, 2021))).

Each of Plaintiff's claims request damages without inviting the Court to overturn the Judgment of Foreclosure and Sale and Confirmation Order. *See Dorce*, 2 F.4th at 104 ("[The Second Circuit] has concluded that *Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct 'that defendants pursued in obtaining' state court judgments." (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015))); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."); *Sykes*, 780 F.3d at 94–95 (noting that "claims . . . speak[ing] not to the propriety of the state court judgments, but to the fraudulent course of conduct that [the] defendants pursued in obtaining such judgments" are not barred by *Rooker-Feldman*); *see also Vossbrinck*, 773 F.3d at 427–28 (finding the plaintiff's request for the court to grant him title to his property was barred by *Rooker-Feldman* but the plaintiff's requests for damages suffered from the defendants' alleged fraud was not barred by *Rooker-Feldman* because the reviewing federal court was not required to review the state court judgment).

Plaintiff alleges Defendants knowingly presented deceptive and fraudulent filings with inflated interest amounts in the State Court Action, (Am. Compl. ¶¶ 82, 89, 93, 104–05), and the state court "merely ratified" Defendants' conduct, (Pl.'s Opp'n 11). Taken together, Plaintiff's

allegations "can be liberally construed as asserting fraud claims that are not barred by *Rooker–Feldman* — because they seek damages from Defendants for injuries [plaintiff] suffered from their alleged fraud." *See Vossbrinck*, 773 F.3d at 427; *Lindow*, 2024 WL 4665181, at *6 ("Liberally construed, the plaintiff's complaint reaches beyond the attack on the state court judgment and may be read as a claim for damages stemming from the defendants' allegedly fraudulent conduct in connection with the foreclosure proceeding.  Specifically, the plaintiff claims that the defendants 'knowingly presented false information' in order to secure the foreclosure judgment.").  Moreover, Plaintiff does not seek injunctive or declaratory relief concerning Defendants' interest in the Subject Property, only damages, and therefore, *Rooker-Feldman* does not bar Plaintiff's claims.  *Cf. Barlow v. Nationstar Mortg. LLC*, No. 21-1483, 2022 WL 950949, at *2 (2d Cir. Mar. 30, 2022) (summary order) (finding that the plaintiff's requests for a temporary and permanent injunction against foreclosure "activity" and an "accounting" of his loan payments were barred by *Rooker-Feldman* because the plaintiff's alleged injuries of extreme emotional distress, slander and lost equity were based on the state court foreclosure judgment and the amount the state court determined he owed on his mortgage); *Vossbrinck*, 773 F.3d at 427 (finding *Rooker-Feldman* barred the plaintiff's requests for title and tender of his property); *Lindow*, 2024 WL 4665181, at *5 (concluding the court lacked jurisdiction over each claim for injunctive or declaratory relief concerning the plaintiff's and the defendants' interest in the property).

### c.   SONYMA is not entitled to sovereign immunity

SONYMA argues Plaintiff's claims against it are barred by sovereign immunity pursuant to the Eleventh Amendment to the U.S. Constitution because it is an "an arm of the state." (SONYMA's Mem. 5 (quoting *Mancuso v. N. Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir.

1996).)  In support of its claim for sovereign immunity, SONYMA applies a six-factor test from the Second Circuit case *Mancuso* which provides in relevant part the following factors that a court must consider in determining whether an entity is entitled to sovereign immunity:

> (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.

(*Id.* at 5–6 (quoting *Mancuso*, 86 F.3d at 293).)  In addition, SONYMA contends that when those factors "point in different directions," (*id.* at 6), a court asks "(a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk?" (*id.* (quoting *Mancuso*, 86 F.3d at 293)).  SONYMA also contends that "[i]n cases that remain close, the most important factor is whether the suit exposes the state treasury to a risk of liability." (*Id.* (quoting *T.W. v. N.Y. State Bd. of L. Exam'rs (T.W. II)*, 110 F.4th 71, 80 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025)).

With respect to the first factor — how the entity is referred to in the documents that created it — SONYMA argues New York Public Authorities Law § 2403(1) created SONYMA and states, "[t]he agency shall be a corporate governmental agency of the state, constituting a political subdivision and public benefit corporation." (SONYMA's Mem. 6 (citing N.Y. Pub. Auth. L.§ 2403(1)).)  However, SONYMA acknowledges that "being a 'political subdivision' or 'public benefit corporation' does not automatically confer sovereign immunity or prevent it." (*Id.* (quoting *Everston v. State of N.Y. Mort. Agency*, No. 89-CV-7474, 1992 WL 6190, *4–5 (S.D.N.Y. Jan. 3, 1992).)  SONYMA argues that even though the court in *Everston* found that SONYMA was not an "arm of the state" for sovereign immunity purposes, the *Everston* holding

21

does not bind the Court in this case because it predates *Mancuso* and other precedential law and does not discuss the risks of liability to the state treasury. (*Id.* at 6 n.1.) As to the second factor — how the governing members of the entity are appointed — SONYMA contends that New York Public Authorities Law § 2403(1) establishes how governing members are appointed and states that governing members are appointed by high-ranking state officials for limited terms, and as a result, this factor points to SONYMA being an arm of the state. (*Id.* at 6–7.) In addressing the third factor — how the entity is funded — SONYMA argues its primary source of funding is issuing bonds. (*Id.* at 7.) Occasionally the State of New York allocates a state subsidy to SONYMA, but since the bonds are not the debt of the state, SONYMA contends this factor "does not necessarily point to SONYMA being an arm of the state . . . ." (*Id.*) In addressing the fourth factor — whether the entity's function is traditionally one of local or state government — SONYMA states its purpose, as set forth by New York law, "is to address a state-wide issue pertaining to the inadequate supply of safe and sanitary dwelling accommodations," and this is primarily an issue of state, not local, government. (*Id.* at 7–8.) As to the fifth factor — whether the state has a veto power over the entity's actions — SONYMA argues it is governed by state officials, pursuant to New York Public Authorities Law § 2403(1), and therefore it is "not independent of the state." (*Id.* at 8.) SONYMA contends that even though no state officials have "veto" power over it, tight regulations and oversight by the state such as state laws governing SONYMA, filing annual reports with various state entities, and review by the Comptroller of the State of New York support the conclusion that SONYMA is an arm of the state. (*Id.*) Finally, in addressing the sixth factor — whether the entity's obligations are binding upon the state — SONYMA argues the state "could be liable" to indemnify SONMYA in this case under the indemnity provision in New York Public Authorities Law § 2404(27)(c). (*Id.* at

9.)  However, the statute exempts the state from liability for any fraud or other "actions [committed by SONYMA] in bad faith, gross negligence or willful misconduct."  (*Id.* (citing N.Y. Pub. Auth. L. § 2404(27)(c).)  SONYMA argues that there is an "unresolved risk the state would have to indemnify SONYMA for the costs of this action if SONYMA itself did not have adequate funding."  (*Id.*)  Although SONYMA notes that New York Public Authorities Law § 2410 provides that the State is not liable for "bonds, notes, insurance commitments or contracts or development corporation credit support and other obligations of [SONYMA]," (*id.* (quoting N.Y. Pub. Auth. L. § 2410)), it argues that this language was "intended to refer to contractual and legal obligations of SONYMA" and does not address the issue of judgments against SONYMA, and therefore, the Court may have to "harmonize" New York Public Authorities Law Sections 2404(27)(c) and 2410.  (*Id.*)   Accordingly, SONYMA argues that Plaintiff's claims "expose[] the state treasury to a risk of liability," and this factor supports a finding in favor of SONYMA being an arm of the state.  (*Id.* at 10 (quoting *T.W. II*, 110 F.4th at 80).)

In addition, SONYMA contends that since the second, fourth, fifth and sixth *Mancuso* factors suggest that SONYMA is an arm of the state for the purposes of state sovereign immunity and factors one and three weigh against it, the Court must look to the two aims of the Eleventh Amendment: "(a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk?'"  (*Id.* (quoting *Mancuso*, 86 F.3d at 293).)  In addressing the first question — will allowing the entity to be sued in federal court threaten the integrity of the state? — SONYMA argues that the state's involvement in SONYMA's business, such as its appointment of governing officials and regulation of SONYMA's books and records, puts the integrity of the state at risk if SONYMA is denied state sovereign immunity.  (*Id.*)  In addressing the second question — does it expose the state treasury to risk? — SONYMA

23

contends the state treasury is at risk.  (*Id.*)  SONYMA argues that Plaintiff fails to address the treasury's potential liability for SONYMA's legal fees and expenses if SONYMA prevails in the lawsuit.  (SONYMA's Reply 1–2.)  Since the answer to both questions is yes, SONYMA argues the Court should therefore find that SONYMA is an arm of the state and entitled to sovereign immunity.  (SONYMA's Mem. 10.)

Plaintiff argues that SONYMA is not protected by sovereign immunity.  (Pl.'s Opp'n 38–41.)  Citing to "SONYMA's own admission [that] all six factors do not point towards SONYMA being an 'arm of the state'," (*id.* at 39 (citing SONYMA's Mem.)), Plaintiff does not address the six *Mancuso* factors and only addresses the "two reasons for the Eleventh Amendment: (1) protecting the dignity of the State, and (2) preserving the state treasury," (*id.* (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 240 (2d Cir. 2006))).  First, Plaintiff argues that under a "plain reading" of New York Public Authorities Law § 2410 the state is not liable for a court judgment or money judgment against SONYMA because the statute's language excludes liability for "other obligations."  (*Id.* at 40 (quoting N.Y. Pub. Auth. L. § 2410).)  Plaintiff argues the court in *Everston* concluded that a money judgment fell into the category of "other obligations."  (*Id.* (citing 1992 WL 6190 at *4.).)  Second, Plaintiff argues that a "plain reading" of New York Public Authorities Law § 2410 and "consideration of Title 17 [SONYMA's enabling statutes] as a whole" shows that the state treasury would not pay for a court or money judgment against SONYMA.  (*Id.* at 41.)  Finally, Plaintiff argues the "vulnerability of the State's purse [is] the most salient factor in Eleventh Amendment determinations," and therefore the Court should not afford SONYMA sovereign immunity.  (*Id.* at 40–41 (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) (citations omitted)).)

24

"The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states[,]" and precludes "actions in which a state is actually named as a defendant, but also certain actions against state agents and instrumentalities, including actions for the recovery of money from the state." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (first citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); then citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); and then citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) (first citing U.S. Const. amend. XI; and then citing *Alden v. Maine*, 527 U.S. 706, 727–28 (1999)). States may only be sued in federal court when they have waived their sovereign immunity, Congress has acted to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment, or the plaintiff is suing a state official in his or her official capacity for prospective injunctive relief from an ongoing constitutional violation. *See* U.S. Const. amend. XI; *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) ("The Eleventh Amendment precludes suits against a state unless the state expressly waives its immunity or Congress abrogates that immunity." (citing *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002))); *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013); *Woods*, 466 F.3d at 236. "[T]he Eleventh Amendment applies to a suit for damages brought against an entity that is fairly considered to be an 'arm of the state.'" *T.W. II*, 110 F.4th at 80 (quoting *Mancuso*, 86 F.3d at 292); *Mary Jo C.*, 707 F.3d at 152 ("[T]he immunity recognized by the Eleventh Amendment

25

extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state (internal quotation marks omitted) (quoting *Woods*, 466 F.3d at 236)).

"Whether an entity is 'an arm of the State . . . is a question of federal law' that 'can be answered only after considering the provisions of state law that define the agency's character.'" *Galette v. N.J. Transit Corp.*, 607 U.S. ----, ----, 146 S. Ct. 854, 865 (2026) (quoting *Regents of Univ. of Cal.*, 519 U.S. at 429, n. 5). The Supreme Court has a long line of cases that analyze whether a state instrumentality is independent or whether it is an "arm-of-the-State." *See id.* at 866–71. In reviewing its jurisprudence, the court in *Galette* concluded that its "precedents have consistently, and predominantly, examined whether the State structured the entity as a legally separate entity liable for its own judgments." *Id.* at 868. The Supreme Court then used three separate elements to determine whether an entity is an arm of the state: whether the state: (1) structured the entity as "a legally separate entity"; (2) was "formally liable" for any of the entity's debts or liabilities; and (3) exerted control over the entity. *Id.* at 866–71. First, a corporate form or other structure may "signal[] the State has created a legally separate entity" including designation by law that the entity was a "separate legal entity," *id.* at 868 (quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979)), or a "local public entity," *id.* at 869 (quoting *Moor v. Alameda Cnty.*, 411 U.S. 693, 719 (1973)). However, regardless of the structure, the "ultimate question remains whether the State structured the entity as part of itself or as legally independent." *Id.* Second, the Supreme Court stated formal liability for judgments indicated that the "entity is more likely to be an arm of the State because its liabilities necessarily undermine the State's ability to make choices about how to allocate the State fisc." *Id.* The Supreme Court noted that an entity's practical financial relationship differed from formal legal liability. *Id.* It further explained that a State "cannot imbue an entity with its

26

immunity simply" through indemnifying the entity, *id.* (citing *Lewis v. Clarke*, 581 U.S. 155, 165 (2017)), nor does a state's history of subsidizing the entity confer sovereign immunity, even when the funding was a "significant amount," *id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  Third, the Supreme Court stated that the degree of control exerted over the entity may be considered when determining if the entity is an arm of the state, but cautioned courts against reliance on the element of control since it "is not especially probative because 'ultimate control of every state-created entity resides with the State,' even those that are not arms of the State." *Id.* (quoting *Hess*, 513 U.S. at 47).

As discussed above, in *Mancuso*, the Second Circuit outlined a six-factor inquiry to assess whether an entity is an arm of the state.  *T.W. II*, 110 F.4th at 80 (quoting *Mancuso*, 86 F.3d at 293).  If the factors "point in different directions, a court asks '(a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk?'" *Id.* (quoting *Mancuso*, 86 F.3d at 293).  However, in a close case, "the most important factor is whether the suit exposes the state treasury to a risk of liability." *Id.* (citing *Mancuso*, 86 F.3d at 293).

Focusing on the elements set forth in *Galette*, while also considering the *Mancuso* factors, the Court finds that SONYMA is not an arm of the state for the purposes of sovereign immunity under the Eleventh Amendment.

First, the State of New York structured SONYMA as a legally separate, corporate entity. New York Public Authorities Law § 2403(1) established SONYMA as "a corporate governmental agency of the state, constituting a political subdivision and public benefit corporation." N.Y. Pub. Auth. L. § 2403(1).  Consistent with that label, SONYMA has "typical corporate powers," *Galette*, 146 S. Ct. at 871, including to "sue or be sued," "make and execute

contracts," "make and alter by-laws for its organization and internal management," and "acquire, hold and dispose of real and personal property for its *corporate purposes*," N.Y. Pub. Auth. L. §§ 2404(1), (3)–(5) (emphasis added). *See Galette*, 146 S. Ct. at 871 (finding NJ Transit was a separate legal entity because its enabling statute created it as a "body corporate and politic with corporate succession" and it possessed typical corporate powers including the ability to sue or be sued, enter contracts, acquire property, make bylaws, and more); *Everston*, 1992 WL 6190, at *4 (interpreting SONYMA's enabling statute and finding its designation "as a 'political subdivision' weigh[ed] against application of Eleventh Amendment immunity." (quoting N.Y. Pub. Auth. L. § 2403(1))). SONYMA's corporate status serves as "strong evidence" it is not an arm of the state. *Galette*, 146 S. Ct. at 871 (first citing *Bank of U.S. v. Planters' Bank of Ga.*, 22 U.S. 904, 907 (1824); and then citing *Hess*, 513 U.S. at 44–46).

Second, the State is not formally liable for judgments against SONYMA under New York Public Authorities Law § 2410 which specifies that, "[t]he bonds, notes, insurance commitments or contracts or development corporation credit support and other obligations of the agency *shall not be a debt of the state of New York*." N.Y. Pub. Auth. L. § 2410 (emphasis added); *see Galette*, 146 S. Ct. at 871 (finding New Jersey was not formally liable for NJ Transit's debts or liabilities under similar statutory language: "[n]o debt or liability of the corporation *shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit of the State*." (emphasis added) (quoting N. J. Stat. § 27:25–17); *Everston*, 1992 WL 6190, at *4 (finding a "money judgment" fell into the category of "other obligations" under New York Public Authorities Law § 2410 because, despite its "somewhat ambiguous" language, in reading the provision as a whole, "it becomes clear that the state did not intend to assume liability for money judgments rendered against SONYMA"). SONYMA argues that Section 2410's

28

language "refer[s] to contractual and legal obligations of SONYMA," and could possibly not apply to "the issue of judgments" because the State could be required to indemnify SONYMA under New York Public Authorities Law § 2404(27)(c), which provides that the State will:

> indemnify . . . [SONYMA] from and against any and all liability, loss, damage, interest, judgments and liens growing out of, and any and all costs and expenses (including, but not limited to, counsel fees and disbursements) arising out of or incurred in connection with any and all claims, demands, suits, actions or proceedings which may be made or brought against it . . . except for fraudulent acts, actions taken in bad faith, gross negligence or willful misconduct.

(SONYMA's Mem. 9 (citing N.Y. Pub. Auth. L. § 2404(27)(c)).)  The Court is not persuaded by this argument because indemnification does not "imbue an entity with its immunity." *Galette*, 146 S. Ct. at 869; *Lewis*, 581 U.S. at 165 ("The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.")  Moreover, under a plain reading of New York Public Authorities Law § 2404(27)(c), "indemnification is not a certainty," *Lewis*, 581 U.S. at 166, because the state will not be indemnified should the Court determine that SONYMA engaged in fraud or "bad faith, gross negligence or willful misconduct," (N.Y. Pub. Auth. L. § 2404(27)(c)).[13]  *Lewis*, 581 U.S. at 166 (finding indemnification provision was insufficient to extend a sovereign immunity defense against an employee in his individual capacity and that indemnification was "not a certainty" because "wanton, reckless, or malicious" activity was exempted under statute (citation omitted)).

---

[13] SONYMA argues that *Everston* "did not discuss the potential risk of liability to the state treasury should New York Public Authorities Law § 2404(27)(c) be held applicable" or apply the *Mancuso* factors in determining SONYMA was not an arm of the state for the purposes of state sovereign immunity, but those distinctions are immaterial.  (*See* SONYMA's Mem. 6 n.1).  Supreme Court jurisprudence includes "a long line of cases in which [the Supreme Court] has found state-created corporations that are formally liable for their own judgments not to be arms of the States that created them," *Galette*, 146 S. Ct. at 875, and as discussed in this Section, indemnification does not "imbue an entity with its immunity," *id*. at 869.

29

Third, the Court considers, but does not weigh heavily, the control that the state exerts over SONYMA and finds that New York exerts some, but not a significant amount, of control over SONYMA.  SONYMA's directors are appointed by high-ranking state officials including the comptroller and the governor, *see* N.Y. Pub. Auth. L. § 2403(1), state law dictates the amount of bonds SONYMA may issue annually, *id.* § 2407, SONYMA must file annual reports with various state officials and executives, *id.* §§ 2419, 2419-a, and the State Comptroller may examine SONYMA's books and accounts, *id.* § 2415(1).  However, as SONYMA admits, the State does not possess veto power over any of SONYMA's actions, (SONYMA's Mem. 8), and this demonstrates some amount of independence.  *See T.W. v. N.Y. State Bd. of L. Exam'rs (T.W. I)*, No. 16-CV-3029, 2022 WL 2819092, at *4 (E.D.N.Y. July 19, 2022) (discussing *Mancuso* factors and finding factor five — whether the state has a veto power over the entity — weighed against finding sovereign immunity because the state did not have veto power), *aff'd*, 110 F.4th 71 (2d Cir. 2024).  Accordingly, New York exerts some, but not significant, control over SONYMA because it has appointment and oversight powers but lacks veto power.  *Cf. Galette*, 146 S. Ct. at 871–72 (finding that New Jersey exerted "a substantial amount of control over NJ Transit" such as the governor holding appointment and removal powers over the board of NJ Transit, gubernatorial veto power, and legislative veto power over some eminent domain actions).  Regardless, the Court does not weigh this element heavily because "ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates," *Hess*, 513 U.S. at 47, SONYMA is a legally separate corporate body, and the State is not formally liable for its judgments.  *See Galette*, 146 S. Ct. at 871–72 (finding that despite New Jersey exerting "a substantial amount of control over NJ Transit," this level of control did not "meaningfully affect NJ Transit's status, given the fact that it is a legally separate corporation

and is responsible for its own judgments").  As a result, SONYMA is not an "arm of the state," and is therefore not entitled to sovereign immunity under the Eleventh Amendment.

### d.    All of Plaintiff's claims are time-barred and equitable tolling does not apply

The Court considers the parties' arguments regarding statutes of limitations and equitable tolling and finds that all of Plaintiff's claims are time-barred, and equitable tolling is inapplicable.

### i.    The statute of limitations for each claim has expired

Defendants move to dismiss with prejudice all of Plaintiff's claims on the grounds that the statutes of limitations have expired.  (SONYMA's Mem. 1, 18–20; M&T Bank's Mem. 5–6.) In support, Defendants argue Plaintiff's claims accrued upon the filing of the Referee's Report of Sale on April 11, 2018.[14]  (SONYMA's Reply 3; M&T Bank's Mem. 2).

Plaintiff acknowledges that the statutes of limitations have expired for his claims, (*see* Am. Compl. ¶¶ 165–70 (pleading tolling of statutes of limitations)), but argues that his claims are timely under equitable tolling and fraudulent concealment doctrines because they were filed within one year after discovering "Defendants' self-concealing fraud," (Pl.'s Opp'n 21–24).

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019) ("[A]n FDCPA claim must be brought 'within one year from the date on which the violation occurs.'" (quoting *id.*)).  "An FDCPA violation occurs 'when an individual is injured by the alleged unlawful conduct.'"  *Makhnevich v. Novick Edelstein*

---

[14]  The Court notes the Referee's Report of Sale was filed on April 23, 2018.  Referee's Report of Sale, No. 501233/2015.

*Pomerantz PC*, No. 23-202, 2024 WL 2207061, at *1 (2d Cir. May 16, 2024) (summary order) (quoting *Benzemann*, 924 F.3d at 83).

A GBL § 349 claim must be brought within three years from the date on which the plaintiff was first injured by the allegedly deceptive act or practice. *In re Columbia Coll. Rankings Action*, No. 22-CV-5945, 2024 WL 1312511, at *10 (S.D.N.Y. Mar. 26, 2024) (stating GBL § 349 claims "must be commenced within three years of the date of accrual, which occurs when the plaintiff is injured by the deceptive act or practice that violated the statute" (quoting *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019))); *see also Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 149 n.8 (S.D.N.Y. 2014) (holding the three-year statute of limitations barred the plaintiffs' GBL § 349 claims when the plaintiffs alleged fraud-based conduct (first citing *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000); and then citing N.Y. C.P.L.R. § 214(2))).

A civil RICO claim must be brought within four years of accrual, which occurs "when the plaintiff discovers or should have discovered the RICO injury." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (first quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); and then citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Claims of negligence and gross negligence must be brought within three years from the date of accrual, which is the date of the injury. *See Shukla v. Meta Platforms Inc.*, No. 23-CV-10150, 2024 WL 4108563, at *13 (S.D.N.Y. July 17, 2024) (finding the plaintiff's negligence claim was time-barred as construed under either N.Y. C.P.L.R. § 214(4) for injury to property or N.Y. C.P.L.R. § 214(5) for personal injury because both had three-year statutes of limitations (first quoting *Vaccaro v. Bank of Am., N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *6 n.12 (S.D.N.Y. Sep. 15, 2016); and then citing N.Y. C.P.L.R. § 214)), *report and recommendation*

32

*adopted*, 2024 WL 3634796 (S.D.N.Y. Aug. 2, 2024), *reconsideration denied sub nom.*, *Shukla v. Deloitte Consulting LLP*, 2024 WL 5162062 (S.D.N.Y. Oct. 28, 2024), *appeal dismissed*, No. 24-3126 (2d Cir. Jan. 14, 2025); *Spinnato v. Unity of Omaha Life Ins.*, 322 F. Supp. 3d 377, 391–92 (E.D.N.Y. 2018) (applying three-year statute of limitations for negligence and gross negligence claims).

A cause of action for legal malpractice must be brought within three years from the time of accrual. *Campbell v. L. Off. of Solomon Rosengarten*, 238 N.Y.S.3d 679, 680 (App. Div. 2025) (citing N.Y. C.P.L.R. §§ 203(a), 214(6)). An action to recover damages for attorney deceit under Judiciary Law § 487 may be subject to a six-year statute of limitations. *Catsiapis v. Pardalis & Nohavicka, LLP*, 194 N.Y.S.3d 522, 523 (App. Div. 2023) (first citing N.Y. C.P.L.R. § 213(1) (providing a six-year statute of limitations for "an action for which no limitation is specifically prescribed by law"); and then citing *Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 15 (2014)); *see Melcher*, 23 N.Y.3d at 15 (finding claims for attorney deceit are subject to the six-year statute of limitations under N.Y. C.P.L.R. § 213(1)). However, "[t]he statute of limitations for a cause of action alleging legal malpractice, and a cause of action alleging a violation of Judiciary Law § 487 arising out of the same transactions as the legal malpractice cause of action, is three years." *Pergament v. Gov't Emps. Ins.*, --- N.Y.S.3d ---, ---, 2026 WL 157439, at *2 (App. Div. Jan. 21, 2026) (first quoting *Fraumeni v. L. Firm of Jonathan D'Agostino, P.C.*, 187 N.Y.S.3d 99, 101 (App. Div. 2023); then citing N.Y. C.P.L.R. § 214(6); and then citing *Farage v. Ehrenberg*, 996 N.Y.S.2d 646 (App. Div. 2014)); *see Catsiapis*, 194 N.Y.S.3d at 523 (dismissing Judiciary Law § 487 as barred by three-year statute of limitations because the claim was "premised on the same facts as the legal malpractice cause of action and [did] not allege distinct damages") (citations omitted)); *Farage*, 996 N.Y.S.2d at 651–52, 655

33

(distinguishing *Melcher*, 23 N.Y.3d 10, because it did not involve a claim of legal malpractice and finding N.Y. § C.P.L.R. 214(6) governed any claims of legal malpractice, including Judiciary Law § 487, with a three-year statute of limitations); *see also* N.Y. C.P.L.R. § 214(6) (providing a three-year statute of limitations to recover damages for "malpractice, other than medical, dental or podiatric malpractice").

The statute of limitations for claims of unjust enrichment vary depending on the nature of the claim and the relief sought: unjust enrichment claims seeking monetary damages have a three-year statute of limitations.[15]  *St. Martinus Univ., N.V. v. SMU LLC*, No. 21-CV-1888, 2023 WL 2969284, at *12 (E.D.N.Y. Mar. 9, 2023); *Bilalov v. Gref*, No. 20-CV-9153, 2022 WL

---

[15]  Unjust enrichment is not explicitly named in the New York statutes of limitations, and courts in the Second Circuit have cited to different New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") statutes for unjust enrichment claims based on the underlying theory, accompanying causes of action, and type of relief sought.  *See Nwoye v. Obama*, No. 22-CV-1791, 2023 WL 4631712, at *14 (S.D.N.Y. July 20, 2023) (discussing six-year statute of limitations period for unjust enrichment claim under N.Y. C.P.L.R. § 213(2) for breach of contract claims (citing *Seidenfeld v. Zaltz*, 80 N.Y.S.3d 311, 311 (App. Div. 2018))), *report and recommendation adopted*, 2023 WL 5164156 (S.D.N.Y. Aug. 11, 2023), *aff'd*, No. 23-1178, 2024 WL 911753 (2d Cir. Mar. 4, 2024) (summary order); *see also Oppedisano v. Zur*, No. 24-2955, 2025 WL 2682227, at *2 (2d Cir. Sep. 19, 2025) (summary order) (applying catchall six-year limitations period in N.Y. C.P.L.R. § 213(1) for actions that do not otherwise have a specific limitations period proscribed by statute); *Yeend v. Akima Glob. Servs., LLC*, No. 20-CV-1281, 2025 WL 959968, at *18 (N.D.N.Y. Mar. 31, 2025) ("Courts within the Second Circuit apply a three-year or six-year statute of limitations to unjust enrichment claims depending on the substantive remedy sought by the plaintiff.  If monetary relief is sought, a three-year statute of limitations applies.  If an equitable remedy is sought, a six-year statute of limitations applies." (citing *Bascuñan v. Elsaca*, No. 15-CV-2009, 2021 WL 3540315, at *6, 6 n.5 (S.D.N.Y. Aug. 11, 2021))), *appeal docketed*, No. 25-2209 (2d Cir. Sep. 15, 2025); *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 65 (S.D.N.Y. 2020) (discussing split among New York's intermediate appellate courts with the Second Department applying a three-year statute of limitations for unjust enrichment claims under N.Y. C.P.L.R. § 214(3) when a plaintiff seeks monetary relief and a six-year limitations period when a plaintiff seeks equitable relief under N.Y. C.P.L.R. §§ 213(1)–(2), and the First Department emphasizing the "nature of the claim" and applying a six-year limitations period when a claim for unjust enrichment rests on facts that also support another claim governed by a six-year statute of limitations, even when the plaintiff seeks damages).

34

4225968, at *10 (S.D.N.Y. Sep. 13, 2022) (applying three-year statute of limitations to unjust enrichment claim for "wrongful taking of [ ] shares" and applying six-year statute of limitations to claims for fraud and conspiracy to commit fraud for the same underlying conduct); *Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012) (explaining unjust enrichment claims seeking monetary damages are governed by the three-year statute of limitations under N.Y. C.P.L.R. § 214(3)), *aff'd*, 541 F. App'x 71 (2d Cir. 2013); *but see St. Martinus Univ.*, 2023 WL 2969284, at *12 (describing a split among the intermediate New York appellate courts under what circumstances to apply the three-year or six-year statute of limitations period to an unjust enrichment claim (citing *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020))).

Claims for conversion must be brought within three years from the occurrence of the conversion or the unjust act. *Su v. Hwang*, No. 24-653, 2025 WL 1983182, at *4 (2d Cir. July 17, 2025) (summary order) (citing N.Y. C.P.L.R. § 214(3)); *Bilalov*, 2022 WL 4225968, at *10 (first citing N.Y. C.P.L.R. § 214(3); and then citing *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 3240428, at *11 (S.D.N.Y. Aug. 7, 2012)).

A cause of action for *prima facie* tort must be brought within three years from the date of injury if the plaintiff seeks damages for economic loss. *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 129–30 (W.D.N.Y. 2022) (first citing *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 75–76 (S.D.N.Y. 1995); and then citing N.Y. C.P.L.R. § 214).

At the latest, Plaintiff's alleged injury stems from the miscalculations in the Referee's Report of Sale for the State Court Action, which was filed on April 23, 2018. Plaintiff admits Defendants' "fraudulent miscalculation" "becomes discoverable" with the Referee's Report of Sale, and "the inflated interest figure is disclosed in the [Referee's] Report of Sale." (Pl.'s Opp'n 22–23.) Thus, Plaintiff's claims began accruing on that date, which is seven years before

35

Plaintiff commenced this action.  In addition, Plaintiff's claim for unjust enrichment against

SONYMA seeks $5,000,000 in monetary damages for the overcompensation of SONYMA from

the alleged interest miscalculation.  (Am. Compl. ¶¶ 149, 152.)  Because the relief sought is

monetary damages, and not equitable relief, the three-year statute of limitations applies.  *St.

Martinus Univ.*, 2023 WL 2969284, at *12 (applying three-year statute of limitations for unjust

enrichment claim seeking monetary damages).  The longest statute of limitations for any of

Plaintiff's claims is four years for the civil RICO claim, and therefore all of Plaintiff's claims are

time-barred.

### ii.  Equitable tolling does not apply to Plaintiff's claims

Plaintiff alleges the statutes of limitations on his claims should be tolled pursuant to the

discovery rule, (Am. Compl. ¶¶ 165–67), and equitable tolling and fraudulent concealment, (*id.*

¶¶ 168–70).[16]  (Pl.'s Opp'n 21–14.)  First, Plaintiff contends the discovery rule applies to all

---

[16]  In the Amended Complaint, Plaintiff generally argues for tolling the statutes of
limitations on his causes of action and pleads "discovery rule tolling" and "equitable estoppel
(fraudulent concealment tolling)."  (Am. Compl. ¶¶ 165–70.)  In his Opposition, Plaintiff only
discusses fraudulent concealment and equitable tolling.  (Pl.'s Opp'n 21.)  In their motion papers,
SONYMA and M&T Bank discuss discovery rule tolling and equitable tolling based on
fraudulent concealment.  (SONYMA's Mem. 18–22; M&T Bank's Mem. 6–10.)
　　　The Second Circuit has stated that the terminology in this area is not always used with
precision.  *See Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *3 (2d Cir. May 16,
2025) (summary order) ("New York courts and the courts of this Circuit variously use the terms
'fraudulent concealment,' 'equitable tolling' and 'equitable estoppel,' not always with clear
delineation." (quoting *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022))); *Ellul v.
Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) ("The distinction between
equitable tolling and the diligence-discovery rule has not always been clear in our caselaw.");
*Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002) ("The initial difficulty encountered
in trying to compare accrual, governed by federal law, with tolling, governed by state law, is that
the reported decisions of the federal and state courts do not always mean the same thing by their
use of these phrases, and phrases to which some judges ascribe different meanings are used
interchangeably by other judges.").  In *Ellul*, the Second Circuit clarified that "the distinction is
that the diligence-discovery rule *delays* the date of accrual where the plaintiff 'is blamelessly

36

claims because he could not have discovered the fraudulent scheme through reasonable diligence, and he did not know the essential elements of his claims until speaking with an attorney in 2024.[17]  (Am. Compl. ¶¶ 165–67.)  Second, Plaintiff contends that equitable tolling

_____

ignorant of the existence or cause of his injury,' while the doctrine of equitable tolling applies *after* the claim has already accrued, suspending the statute of limitations 'to prevent unfairness to a diligent plaintiff.'"  *Ellul*, 774 F.3d at 801 (first quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982); and then quoting *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999)).  Fraudulent concealment often incorporates a discovery inquiry into the tolling analysis.  *See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025) (describing fraudulent concealment as "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." (quoting *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988))), *cert. denied*, --- S. Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (a plaintiff must show "(1) the defendant wrongfully concealed material facts relating to [the] defendant's wrongdoing; (2) the concealment prevented [the] plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) [the] plaintiff exercised due diligence in pursuing the discovery of the claim during the period [the] plaintiff seeks to have tolled." (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))).

Although Plaintiff pleads discovery rule tolling, Plaintiff does not provide any facts or argument to support delaying the date of accrual.  In fact, Plaintiff admits that Defendants' alleged scheme had "become[] discoverable" upon the filing of the Referee's Report of Sale on April 23, 2018, (Pl.'s Opp'n 22), and the interest calculations were "revealed," (Am. Compl. ¶ 63), then.  Plaintiff's theory in support of tolling therefore turns on when a reasonably diligent plaintiff would have been aware of the alleged misconduct, applying tolling after the date of accrual and "suspending the statute of limitations to prevent unfairness to a diligent plaintiff." *See Ellul*, 774 F.3d at 801 (internal citation and quotation marks omitted).  Accordingly, the Court analyzes Plaintiff's arguments under the fraudulent concealment and equitable tolling doctrines without discussing the discovery rule doctrine.

[17]  Although Plaintiff alleges in the Amended Complaint that he did not know the essential elements of his claims until speaking with an attorney in 2024, in his Opposition, Plaintiff alleges a different discovery date of March of 2025.  (Pl.'s Opp'n 23.)  Because the Court finds equitable tolling does not apply, Plaintiff's conflicting pleading is immaterial to the Court's analysis.

suspends the applicable statutes of limitations for all claims[18] up until the commencement of this action because Defendants "affirmatively concealed from Plaintiff and the other members of the [c]lass the[ir] fraudulent scheme." (*Id.* ¶¶ 168–70; *see* Pl.'s Opp'n 22–24.)  In support, Plaintiff states that Defendants' improper interest calculation "is not visible to the plaintiff-borrower, the court, nor subordinate lienholders . . . [until] after the foreclosure auction has occurred and Defendants file the Report of Sale."[19] (Pl.'s Opp'n 22.)  Third, Plaintiff argues Defendants "exercise control" over the Report of Sale and "there is no contemporaneous judicial or adversarial review of the interest calculations before they are used for determining the existence and distribution of surplus proceeds." (*Id.*)  Plaintiff argues that the "delayed disclosure [ ] functions as a post-hoc concealment tool," and Plaintiff is "left unaware that Defendants engineered an inflated judgment" until after the sale of the Subject Property, and "the surplus [ ] has already been suppressed." (*Id.* at 22–23.)  Fourth, Plaintiff argues that courts in the Southern District of New York recognize equitable tolling of FDCPA claims when defendant-companies and attorneys file false affidavits because the affidavits are "inherently self-concealing." (*Id.* at 23.)  Plaintiff therefore contends that the court-appointed referee's affidavit attached to the Referee's Report of Sale provided "the guise of legitimacy" which Plaintiff had "no reason to

---

[18]  Plaintiff specifies in one paragraph that equitable tolling and fraudulent concealment toll his FDCPA and GBL § 349 claims, (Pl.'s Opp'n 22), but also argues that the equitable tolling doctrine "applies to Plaintiff's claims here" and to "the instant action" in general. (*Id.* at 21–22.)  Accordingly, the Court considers Plaintiff's equitable tolling and fraudulent concealment arguments as applying to all claims.

[19]  In the Amended Complaint, Plaintiff states that "the court-appointed referee issues a Referee Report of Sale" and calls the report the "Referee's Report." (Am. Compl. ¶ 30.) However, in his Opposition, Plaintiff alleges Defendants filed the Report of Sale, (Pl.'s Opp'n 22), and Defendant Schiller Law filed the Report of Sale, (*id.* at 23), but then calls it the "Referee's Report" or "Report of Sale," (*see id.* at 11–12).

question" "until Plaintiff[] first discovered it when consulting with his attorney" and then he filed the claims within a year. (*Id.* at 23–24.) Finally, Plaintiff argues that "any lack of diligence on [his] part is due to Defendants' own fraudulent scheme." (*Id.* at 24.)

Defendants argue that the doctrine of equitable tolling, including both the discovery rule and fraudulent concealment, do not apply to any of Plaintiff's claims. (SONYMA's Mem. 18–22; M&T Bank's Mem. 6–10.) First, Defendants argue that Plaintiff has failed to satisfy the elements of equitable tolling and fraudulent concealment tolling because he has failed to allege "a single fact that [shows] M&T Bank took any affirmative steps to conceal the existence of the alleged unlawful conduct," (M&T Bank's Mem. 9), or "any concealment on the part of SONYMA," (SONYMA's Mem. 20). Defendants cite to Plaintiff's own allegations in the Amended Complaint to demonstrate that the Referee's Report of Sale "revealed" or "contains the complained of interest calculations," and therefore nothing was "inherently self-concealing." (SONYMA's Mem. 20.) SONYMA also argues that Plaintiff at least had inquiry notice of the claims because Plaintiff had access to the documents in the State Court Action and any failure to discover the alleged "fraudulent scheme" is "solely attributable to lack of diligence on Plaintiff's part." (*Id.* at 21–22.) Second, Defendants argue Plaintiff cannot invoke discovery rule tolling for his FDCPA or GBL § 349 claims because courts have held that the discovery rule does not apply to those claims. (*Id.* at 18–19; M&T Bank's Mem. 7.) Third, Defendants argue that the Court "should reject," (M&T Bank's Mem. 7–8), Plaintiff's suggestion that his claims were not discoverable until speaking with an attorney in 2024 because he could have spoken with an attorney at any time and possessed the operative facts to file the claims. (*Id.* at 8, 10 (citing *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2021 U.S. Dist. LEXIS 183333, at *19 n.4 (S.D.N.Y. Sep. 24, 2021)); SONYMA's Mem. 18–19.) Moreover, Defendants argue that

39

Plaintiff was represented by counsel during the State Court Action over the course of "five plus years" and could have challenged the interest calculations at any time because the calculations were on the record, and Plaintiff admits in the Amended Complaint that they were visible during the State Court Action. (SONYMA's Mem. 18–19, 21; M&T Bank's Mem. 10; M&T Bank's Reply 2.)

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998); *see also Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))). For equitable tolling to apply, a litigant must demonstrate "[1] that some extraordinary circumstance stood in her way and [2] that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (internal quotation marks omitted) (quoting *Doe*, 76 F.4th at 71), *cert. denied*, --- S. Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *Watson*, 865 F.3d at 132 (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . that some extraordinary circumstance stood in [her] way and . . . that [she] has been pursuing [her] rights diligently." (alterations in original) (internal quotation marks and citation omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))); *Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks

40

to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting the party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting same).

Courts will equitably toll statutes of limitations for fraudulent concealment if: "(1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean*, 129 F.4th at 142 (citing *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *8 (D. Conn. Dec. 3, 2025) (quoting *id.*), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026); *see Koch*, 699 F.3d at 157 (a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." (quoting *Corcoran*, 202 F.3d at 543)). "A plaintiff can prove concealment by showing 'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing.'" *Saint-Jean*, 129 F.4th at 143 (quoting *Hendrickson Bros.*, 840 F.2d at 1083);

41

*see SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting same), *appeal dismissed*, No. 24-874, 2024 WL 4491699 (2d Cir. Aug. 28, 2024).  Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or fraudulent concealment "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-4927, 2024 WL 3675855, at *15 (E.D.N.Y. Aug. 6, 2024) ("A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." (quoting *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009))), *aff'd*, No. 24-2363, 2025 WL 2779015 (2d Cir. Sep. 30, 2025) (summary order).  "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations."  *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)).  The "[Second] Circuit has explicitly clarified that 'fraudulent concealment is not essential to equitable tolling,'" meaning, the application of the doctrine of equitable tolling is not limited to causes of fraudulent concealment.  *Saint-Jean*, 129 F.4th at 143 (quoting *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)).

Plaintiff fails to show the doctrine of fraudulent concealment tolling should apply to his claims because he has not pled facts demonstrating that (1) Defendants concealed anything fraudulent or that Defendants' conduct was self-concealing, (2) any alleged concealment prevented Plaintiff's discovery of the claim within the limitations period, or (3) Plaintiff exercised due diligence.  First, Plaintiff alleges "Defendants affirmatively concealed from Plaintiff and the other members of the [c]lass the[ir] fraudulent scheme," (Am Compl. ¶ 168), but

42

then concedes that Defendants "revealed," (*id.* ¶ 63), their "fraudulent scheme to inflate interest calculations in foreclosure judgments," (Pl.'s Opp'n 22), in the Referee's Report of Sale filed on April 23, 2018, and the scheme had also "become[] discoverable" after the foreclosure auction on April 11, 2018, (*id.*). Plaintiff's only allegation of fraud in the Amended Complaint is the miscalculated interest rate that Plaintiff admits was discoverable in the Referee's Report of Sale.[20] (*See* Am. Compl. ¶¶ 62–67.) Thus, the miscalculated interest, which is the basis of Plaintiff's causes of action, was not affirmatively concealed. *See Saint-Jean*, 129 F.4th at 144 (finding affirmative concealment when the defendant-mortgage company rushed the plaintiffs to sign documents that excluded the default interest rate and dissuaded the plaintiffs from bringing counsel at closing).

Nor do the the M&T Bank affidavits and the referee's affidavit make Defendants' alleged conduct inherently self-concealing, as Plaintiff contends. The miscalculations that Plaintiff alleges were concealed in the affidavits were also provided in the Referee's Report of Sale. Plaintiff cites to *Toohey v. Portfolio Recovery Associates, LLC*, to support his claim that the affidavits made Defendants' fraud "self-concealing" and granted legitimacy to the Referee's Report of Sale, and as a result, Plaintiff "had no reason to suspect the fraud at an earlier point in

---

[20] Even accepting Plaintiff's arguments regarding Defendants' fraud-based conduct, including "fraudulent interest calculations," (Am. Compl. ¶ 149), and a "fraudulent scheme," (*id.* ¶ 165), Plaintiff only alleges fraud-based conduct in a conclusory manner. Allegations of fraud must comply with Rule 9(b) of the Federal Rules of Civil Procedure's heightened pleading requirements. *Miller v. United States ex rel. Miller*, 110 F.4th 533, 543 (2d Cir. 2024) ("Rule 9(b) provides, in relevant part: 'In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" (quoting Fed. R. Civ. P. 9(b))); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting same). As discussed in this Section, Plaintiff provides no factual allegations of Defendants' alleged fraudulent scheme of filing false and deceptive documents and instead relies on pure conjecture. "Bare-bones allegations do not satisfy Rule 9(b)." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

time." (Pl.'s Opp'n 17–18 (citing No. 15-CV-8098, 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016).)  In *Toohey*, the plaintiff plausibly alleged that the defendant-debt collectors submitted false affidavits claiming they personally reviewed the "account-level documentation" corroborating the debt's existence and amount, when they had not, and failed to attach any account-level documentation.  *Toohey*, 2016 WL 4473016, at *1 n.3, 6–7, 6 n.8.  In addition, the plaintiff alleged that the defendant-debt collectors prohibited the defendant-counsel from directly contacting original creditors and debt sellers and, therefore, the defendant-counsel "could not itself confirm the legitimacy or accuracy of any debt or amount claimed." *Id.* at *3.  The court in *Toohey* therefore concluded that the defendants' conduct was self-concealing because it contained information that "*only* the [d]efendants could be aware." *Id.* at *6 (emphasis added). In contrast in this case, the affidavits were filed along with the Referee's Report of Sale that "revealed" the calculations using the judgment amount instead of the mortgage principal.  As a result, the affidavits did not contain information that only Defendants knew because it was included in the record, and therefore Plaintiff has not shown "self-concealing" fraud. *See Sejin Precision Indus. Co. v. Citibank, N.A.*, No. 16-CV-6910, 2017 WL 4350323, at *5 (S.D.N.Y. June 28, 2017) (finding the plaintiffs failed to allege defendants' fraud was self-concealing through a "general allegation that [the] defendants 'engaged in secret and surreptitious activities' in order to conceal their misconduct"), *aff'd*, 726 F. App'x 27 (2d Cir. 2018); *cf. Michelo*, 419 F. Supp. 3d at 697–98 (finding the defendants' affidavits in their default filings were inherently self-concealing because they alleged information regarding business records only the defendants knew and the plaintiffs could not discover with reasonable diligence); *see also Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) ("Failure of a plaintiff to plead facts to suggest that the defendants sought to conceal these

44

violations or [the conduct was self-concealing] . . . deprive[s] the plaintiff of any basis for taking advantage of equitable tolling." (citing *Wade v. Rosenthal, Stein & Assocs.*, No. 11-CV-5672, 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012))).

Second, Plaintiff does not show Defendants' alleged concealment specifically prevented Plaintiff's discovery of his claims.  Plaintiff alleges that *both* M&T Bank's affidavits, (Pl.'s Opp'n 22–23), and referee's affidavit, (*id.* at 23), lent legitimacy to the State Court Action and allegedly prevented Plaintiff from exercising reasonable diligence.  Despite the referee's affidavit affirming that the Referee's Report of Sale was "in all respect true and correct" and an "accurate and complete report of the deposition of the proceeds of such sale," (*id.*), Plaintiff fully blames Defendants for the interest miscalculation approved in the State Court Action documents with unsubstantiated claims that Defendants created a "fraudulent scheme" and presented it in the State Court Action, (*see id.* at 18, 22–25).  Plaintiff alleges without factual support that Defendants' "scheme employed standardized fraudulent calculation methods across dozens if not hundreds of foreclosures," (*see id.* at 26), but Plaintiff does not name any additional foreclosure action involving Defendants or provide any other factual support for the statement, (*see* Am. Compl. ¶¶ 71, 118).  Plaintiff alleges no facts to indicate the referee's or the state court's own determinations in the State Court Action were part of a "scheme," (*id.* ¶ 11), or that Defendants' filings "were [ ] ratified by the [state] court without any contemporaneous judicial review," (Pl.'s Opp'n 12).  Plaintiff only alleges that Defendants and the referee used the same "inflated interest figures using unlawful methods," and on that basis alone, Plaintiff alleges that the state court's determinations were not independent and Defendants caused Plaintiff's injuries.  (*Id.* at 19; *see* Am. Compl. ¶¶ 30, 58.)  This is insufficient to show that Defendants' conduct alone prevented Plaintiff from discovering his claims, especially because all of the calculations in the filings were

45

publicly filed. *Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) ("[The plaintiff's] attempt to invoke equitable tolling is unavailing because he pleads in only a conclusory fashion that [defendant-]appellees prevented him from discovering the alleged violation."); *Qureshi v. People's United Bank*, No. 18-CV-163, 2020 WL 2079922, at *13 (D. Vt. Apr. 30, 2020) (finding equitable tolling did not apply because the plaintiffs failed "to plead with particularity that [defendant] fraudulently concealed its wrongdoing").

Third, Plaintiff fails to sufficiently allege reasonable diligence because he neither pleads any action taken to investigate his claims, nor provides facts from which the Court can infer reasonable diligence. In the Amended Complaint, Plaintiff states in conclusory fashion that he "could [not] have discovered, even upon reasonable exercise of diligence," Defendants' fraudulent scheme, (Am. Compl. ¶ 165), and the referee's affidavit attached to the Referee's Report of Sale gave him "no reason to question the truthfulness of [the Referee's Report of Sale]," (Pl.'s Opp'n 23). This is contrary to the allegations in the Amended Complaint that Defendants' interest calculations were "revealed," (Am. Compl. ¶ 63), and therefore, Plaintiff could have conducted his own inquiry. Further, Plaintiff was represented by counsel in the State Court Action who could have reviewed the filings.[21] "Generalized or conclusory allegations of

---

[21] In the State Court Action, Plaintiff was initially represented by Galani Law Firm PC and then changed attorneys on October 28, 2019 to Shiryak, Bowman, Anderson, Gill & Kadochnikov LLP. *See* Not. of Appearance and Consent to Change Attorney, No. 501233/2015 (N.Y. Sup. Ct. filed Oct. 10, 2019), Docket Entry No. 114. (*See* Notice of Claim to Surplus Monies.) However, Plaintiff does not allege his counsel's malpractice "is an extraordinary circumstance" that warrants equitable tolling. Attorney incompetence alone is usually insufficient to meet the standard for equitable tolling. *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *10 (D. Conn. Dec. 3, 2025) ("Even where the extraordinary circumstances . . . involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time." (quoting *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004))), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026).

fraudulent concealment are insufficient to toll a statute of limitations." *Singh*, 445 F. App'x at 378 (citing *Armstrong*, 699 F.2d at 90); *Litovich v. Bank of Am. Corp.*, No. 20-CV-3154, 2025 WL 2521039, at *18 (S.D.N.Y. Sep. 2, 2025) (finding the plaintiffs did not sufficiently plead reasonable diligence because they failed to name a single action they took and pled only conclusory allegations that the defendants' conspiracy and concealing conduct prevented the discovering of their injury); *see Hinds Cty.*, 620 F. Supp. 2d at 521 ("Due diligence is not adequately pled if [the] plaintiffs 'did not allege in the [complaint] that they exercised due diligence' or if they 'make no allegation of any specific inquiries of [the defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'" (alterations in original) (quoting *In re Merrill Lynch*, 154 F.3d at 60)); *see also Conklin*, 2013 WL 4083279, at *7 (finding equitable tolling did not apply to the plaintiffs' FDCPA cases because the plaintiffs "relied solely on reassuring statements that [the d]efendants made and thus, were not sufficiently diligent").

Other than the doctrine of fraudulent concealment tolling which Plaintiff does not demonstrate applies, Plaintiff's Amended Complaint contains no facts suggesting an "extraordinary circumstance" that might otherwise entitle him to equitable tolling. *See Saint-Jean*, 129 F.4th at 142 (stating equitable tolling requires (1) "that some extraordinary circumstance stood in [the plaintiff's] way" and (2) "that [the plaintiff] pursued [his or her] rights diligently" (quoting *Doe*, 76 F.4th at 71)). Therefore, the Court finds that all of Plaintiff's claims are time-barred, and equitable tolling does not apply.

      **iii.   The Court denies Plaintiff's request to amend the Amended Complaint to add M&T Bank as a defendant.**

47

M&T Bank argues Plaintiff incorrectly sued M&T Bank Corporation, the parent company, instead of M&T Bank, the national association, and as a result, the Court should dismiss the complaint because Plaintiff has "failed to plead any facts in his Amended Complaint to support a claim for piercing the corporate veil."[22]  (M&T Bank's Mem. 1, 25–28.)  First, M&T Bank argues that to pierce the corporate veil under New York law, Plaintiff must demonstrate "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  (*Id.* at 27 (quoting *Morris v State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (citations omitted)).)  Second, M&T Bank contends that Plaintiff does not allege facts to support either prong, and as a result, "the allegations in the Amended Complaint plainly relate to an entity other than the named Defendant, Plaintiff has not stated (and cannot state) a claim against Defendant — and, therefore, this Court should dismiss the Amended Complaint."  (*Id.* at 28.)  M&T Bank argues that Plaintiff admits in his Opposition that the State Court Action filings identify "M&T Bank" as the correct servicing agent.  (M&T Bank's Reply 9–10.)

Plaintiff contends that M&T Bank's argument that he incorrectly named M&T Bank Corporation as a Defendant in this action is "procedurally premature and does not support dismissal of Plaintiff's [ ] Amended Complaint."  (Pl.'s Opp'n 37.)  First, Plaintiff contends that M&T Bank's own filings in the State Court Action "do not indicate whether the servicing agent is M&T Bank, a national association, or M&T Bank Corporation, instead just stating 'M&T

---

[22]  Even though the statutes of limitations have expired on Plaintiff's claims, the Court analyzes the parties' arguments regarding whether Plaintiff sued the correct entity although M&T Bank nevertheless defended the action.

Bank.'" (*Id.*)  Second, Plaintiff contends that he received communications from M&T Bank with a mailing address in Buffalo, New York, and that address is "consistent with the M&T Bank Corporation's New York Department of State Division of Corporations registration."  (*Id.* at 37.) As a result, Plaintiff argues "it appears M&T Bank Corporation was the servicing agent" in the State Court Action.  (*Id.* at 37–38.)  Third, Plaintiff contends that he does not have enough information to confirm the correct mortgage servicing agent due to M&T Bank's failure to file the required Rule 7.1 corporate disclosure statement and due to limited discovery.  (*Id.* at 38.) Accordingly, Plaintiff argues that the Court should permit him to amend his Amended Complaint to include M&T Bank.  (*Id.*)

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).  Under Rule 15(c), an amendment to a pleading to change the party against whom a claim is asserted will relate back if (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading," (2) the parties to be brought in "received such notice of the action that it will not be prejudiced in defending on the merits," (3) those parties "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," and (4) elements (2) and (3) were satisfied within the period provided by Rule 4(m) for serving the summons and complaint.  Fed. R. Civ. P. 15(c); *Ceara v. Deacon*, 916 F.3d 208, 211 (2d Cir. 2019) ("Rule 15(c)(1)(C) allows for an amended pleading to relate back to the date of the original pleading if four conditions are met: '(1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that

49

it will not be prejudiced in maintaining its defense; (3) that party [knew or] should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and . . . the original complaint [was] filed within the limitations period." (alterations in original) (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013))); *see Gudanowski v. Burrell*, No. 23-6552, 2024 WL 3594320, at *3 (2d Cir. July 31, 2024) (summary order) ("[U]nder Rule 15(c)(1)(C), relation back is permitted when the party the plaintiff seeks to add to the complaint 'received such notice of the action that it will not be prejudiced in defending on the merits' and 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii))).

Because the Court finds that Plaintiff's claims against the mortgage servicing agent M&T Bank, whether as M&T Bank or as M&T Bank Corporation, are barred by the statutes of limitations, Plaintiff fails to meet the Rule 15(c)(1)(C) requirements to amend the complaint to change or add a party, and the Court declines to evaluate the other Rule 15(c)(1)(C) requirements. *See Ceara*, 916 F.3d at 211 (explaining that Rule 15(c)(1)(C) relation back requires that the "original complaint [must be] filed within the limitations period"). Plaintiff may not amend his Amended Complaint to add M&T Bank as a defendant. In addition, the Court does not address the parties' arguments about piercing the corporate veil because the statutes of limitations, discussed in Section II.d.i, and *res judicata*, discussed *infra*, bar the claims against M&T Bank or M&T Bank Corporation, regardless of which entity was the proper mortgage servicing agent. *See Nkansah v. United States*, No. 18-CV-10230, 2021 WL 5910647, at *5 (S.D.N.Y. Aug. 30, 2021) ("[T]he relation back doctrine is inapplicable where . . . the

50

original complaint itself is untimely." (quoting *Bradley v. Nolan*, No. 03-CV-1616, 2007 WL 959160, at *2 (S.D.N.Y. Mar. 30, 2007))), *report and recommendation adopted*, 2021 WL 5493214 (S.D.N.Y. Nov. 23, 2021); *El-Massri v. New Haven Corr. Ctr.*, No. 18-CV-1249, 2019 WL 3491639, at *12 (D. Conn. July 31, 2019) (denying leave to amend to add new defendants because the claims were time-barred); *Bradley*, 2007 WL 959160, at *2 (denying leave to amend complaint to name additional defendants because an "[e]xamination of plaintiff's proposed amended complaint reveals that it could not withstand a motion to dismiss as all of the claims are time-barred"); *see also Watson v. Connecticut*, No. 20-CV-544, 2020 WL 3404066, at *2 (D. Conn. June 19, 2020) (finding the named defendants were likely immune from a damages suit in federal court and holding the suit was barred by the statute of limitations "[e]ven assuming that any of the named defendants were subject to suit"); *Wingspan Recs., Inc. v. Simone*, No. 12-CV-2172, 2014 WL 2116191, at *9 (S.D.N.Y. May 16, 2014) (denying the addition of an unjust enrichment claim because the statute of limitations had expired and therefore the claim "cannot be saved through the relation-back doctrine").

### iv.  The Court *sua sponte* dismisses Plaintiff's claims against Schiller Law

In general, before affirmative defenses can be considered, including statute of limitations defenses, they must be raised by the defendant at the pleading stage.  *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2022 WL 1266209, at *6 (S.D.N.Y. Apr. 28, 2022); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 710 (S.D.N.Y. 2012) ("Fed. R. Civ. P. 8(c) requires a defendant to 'affirmatively state any avoidance or affirmative defense,' and affirmative defenses that are not raised in the pleading stage should be dismissed." (citation omitted)); *see Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) ("The statute of limitations is an

51

affirmative defense under Fed. R. Civ. P. 8(c) that must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded." (collecting cases)).  However, the Second Circuit has clarified that "[w]hile [such] defenses are ordinarily not to be recognized when not raised in the answer, no absolute bar to the consideration of such claims exists." *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (internal quotation marks and ellipsis omitted) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (first quoting *Davis*, 810 F.2d at 44; and then citing *Carbonell v. La. Dep't of Health & Hum. Res.*, 772 F.2d 185, 189 (5th Cir. 1985)) (same).  The Second Circuit has held that "district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers [the] plaintiff himself submitted.'"  *Walters*, 651 F.3d at 293 (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).  *See also Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *Leonhard*, 633 F.2d at 609 n.11 ("The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim . . . . There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds . . . where . . . the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (citations omitted)); *Hunt v. Bronx Lebanon Hosp.*, No. 22-CV-54, 2022 WL 375415, at *3 (S.D.N.Y. Feb. 7, 2022) ("Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading." (citation omitted)); *De Santis v. City of New York*, No. 10-CV-3508, 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014) ("Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their

own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule." (quoting *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999))).

In this case, the facts supporting the statute of limitations defense for Schiller Law are set forth in Plaintiff's Amended Complaint — Plaintiff states that the allegedly fraudulent interest calculations were "revealed" in the Referee's Report of Sale filed on April 23, 2018.  (Am. Compl. ¶ 63.)  As discussed *supra*, the statutes of limitations for all of Plaintiff's claims have expired and equitable tolling does not apply, and therefore the Court *sua sponte* dismisses Plaintiffs' claims against Schiller Law even though Schiller Law has failed to appear in this action.  *Graham*, 2022 WL 1266209, at *7–8 (dismissing the plaintiffs' default judgment motion *sua sponte* for claims of fraud, negligent misrepresentation, GBL § 349, and slander/defamation involving an underlying state court foreclosure proceeding because the statute of limitations defense was "set forth" in the plaintiffs' second amended complaint and the plaintiffs' failed to plead equitable tolling); *De Santis v. City of New York*, No. 10-CV-3508, 2013 WL 3388455, at *7 (S.D.N.Y. July 8, 2013) (dismissing *sua sponte* the default judgment motion as time-barred because the claims expired and the plaintiff failed to "present[] a viable theory to prevent the running of the limitation periods"), *report and recommendation adopted*, 2014 WL 228659 (S.D.N.Y. Jan. 22, 2014).

> ### e.  Plaintiff's claims against SONYMA and M&T Bank are barred by *res judicata*

Even though all of Plaintiff's claims against Defendants are time-barred, the Court nevertheless addresses the parties' arguments regarding *res judicata*.  For the reasons stated below, the Court finds *res judicata* bars all of Plaintiff's claims against SONYMA and M&T Bank.

Defendants argue *res judicata* bars Plaintiff's claims against them. (SONYMA's Mem. 13; M&T Bank's Mem. 11–13.) First, Defendants contend that the State Court Action resulted in a final judgment that bars all of Plaintiff's claims because they all arise out of the same conduct adjudicated in the State Court Action. (SONYMA's Mem. 13; M&T Bank's Mem. 13.) Second, Defendants argue that Plaintiff had "multiple different opportunities" to challenge the interest calculations, (M&T Bank's Mem. 13), and not only failed to do so, but also "chose instead to seek the surplus funds, utilizing the same calculation he objects to here," (SONYMA's Mem. 13). (*See* SONYMA's Reply 3; M&T Bank's Mem. 13.)

Plaintiff argues *res judicata* does not apply because (1) his claims do not arise out of the same facts that determined the underlying foreclosure judgments, and (2) Defendants lack privity. (Pl.'s Opp'n 16.) First, Plaintiff argues this case and the State Court Action involve "completely different causes of action" because they are "unquestionably based on different facts" that "arose independently of the facts relevant to the underlying [State Court Action]." (*Id.* at 17–18.) Plaintiff contends this case "does not concern the origins and assignment of the mortgage" but different facts regarding "Defendants' submission of fraudulent interest calculations during the post-action stage of foreclosure litigation." (*Id.* at 10.) Second, Plaintiff argues M&T Bank lacks "a cognizable personal interest" in the mortgage principal, the subject of the underlying State Court Action, and therefore M&T Bank cannot establish privity with SONYMA in the State Court Action. (*Id.* at 17 (quoting *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022)).)

Federal courts have "consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from

54

relitigating issues that were or could have been raised in [the previous] action." *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (quoting *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008)); *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Worthy-Pugh*, 664 F. App'x at 22–23 (affirming a district court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action for mortgage fraud was precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ." *Allen*, 449 U.S. at 96. To prove claim preclusion under New York law, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see also Hereford Ins. Co. v. Shelly*, 243 N.Y.S.3d 495, 496 (App. Div. 2025) ("One linchpin of *res judicata* is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been previously brought to a final conclusion.'" (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021))); *Pawling Lake Prop. Owners Ass'n v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to *res judicata*).

55

The privity inquiry turns on "whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action]." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (alterations in original) (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)). New York law provides that privity extends to parties "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Nuseiri v. Kosher Bravo Pizza LLC*, No. 25-CV-764, 2025 WL 3687597, at *3 (E.D.N.Y. Dec. 19, 2025) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)); *see also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *6 (E.D.N.Y. Mar. 11, 2016) (finding that the defendants, who were not named in a state court foreclosure action, were in privity with the state-court plaintiff because of their alleged interests in the federal plaintiff's/state-court defendant's mortgage); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (same); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171, 171 n.12 (E.D.N.Y. 2010) (same). In addition, New York law provides "a mortgage servicer [is] in privity with mortgage lender for the purposes of *res judicata* as applied to state foreclosure proceedings and subsequent federal court proceedings." *Hall v. Select Portfolio Servicing Inc.*, No. 24-CV-2210, 2025 WL 1042339, at *4 (S.D.N.Y. Jan. 14, 2025) (first citing *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008); and then citing *Fequiere*, 2016 WL 1057000, at *7), *report and recommendation adopted*, 2025 WL 958542 (S.D.N.Y. Mar. 31, 2025); *see Pomeranz v. Shor*, 249 N.Y.S.3d 644, 646 (App. Div. 2026) ("Although relationship alone is not sufficient to support preclusion, "[privity] includes those who are successors to a property interest, those who control an action although not formal parties

56

to it, [and] those whose interests are represented by a party to the action." (alterations in original) (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970))).

SONYMA and M&T Bank have satisfied the elements of *res judicata*.  First, the state court entered a Judgment of Foreclosure and Sale on the Subject Property and a Confirmation Order against Plaintiff, which are adjudications on the merits.  *See De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 645 (2d Cir. 2012) (affirming a district court's dismissal of an action on claim preclusion grounds where the plaintiff's action was related to a prior state court foreclosure action because "'[u]nder New York law, a final judgment on the merits of an action precludes' . . . 'all other claims arising out of the same transaction or series of transactions'" (quoting *Giannone*, 548 F.3d at 193)); *Gurevitch v. Emerald Green Prop. Owners Ass'n*, No. 23-CV-8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (foreclosure action resulting in judgment of foreclosure is adjudication on the merits) (citing *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024)); *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp. 3d 196, 201 (D. Conn. 2024) (concluding foreclosure action was an adjudication on the merits where the state court issued a judgment of foreclosure and sale and subsequently issued an order approving the sale); *see also Fequiere*, 2016 WL 1057000, at *5 (holding that a state court's summary judgment order in favor of the foreclosure plaintiff "operate[d] as a final adjudication on the merits for *res judicata* purposes").

Second, SONYMA was a party in the State Court Action.  *See Burton*, 738 F. Supp. 3d at 290 (finding the second element was met where plaintiff was a defendant in the foreclosure action).  In addition, M&T Bank has established privity with SONYMA because it was the mortgage servicer for Plaintiff's mortgage loan.  *See Hall*, 2025 WL 1042339, at *4 (finding the defendant-mortgage servicer was in privity with the defendant-mortgage lender for the purposes

57

of *res judicata* as applied to state foreclosure proceedings and subsequent federal court proceedings).

Lastly, Plaintiff's claims could have been brought in the State Court Action.  Plaintiff asserts claims based on Defendants' alleged misconduct during the State Court Action, including that the Judgment of Foreclosure and Sale authorized "illegal" compound interest, (Am. Compl. ¶ 44), the inclusion of allegedly incorrect interest calculations in the Referee's Report of Sale, (*id*. ¶¶ 63–67), and the state court's confirmation of those calculations, (*id*. ¶¶ 46, 69).  Plaintiff's argument that this case involves "completely different causes of action" that arose "independently" of the State Court Action during the post-action stage of the foreclosure litigation, (Pl.'s Opp'n 17–18), directly contradicts his pleading where Plaintiff alleges that "a [state court] foreclosure action does not end immediately after the foreclosed property is sold," (Am. Compl. ¶ 62), but continues with the Referee's Report of Sale that "revealed the Defendants' fraudulent scheme," (*id.* ¶ 63).  Therefore, Plaintiff's allegations of misconduct concern Defendants' actions prior to and during the State Court Action which were "revealed" in the State Court Action filings before the Confirmation Order.  (*See id.* ¶ 63.)  *Garcha v. City of Beacon*, 232 F. App'x 74, 75 (2d Cir. 2007) ("Later claims arising out of the same factual grouping as an earlier litigated claim are barred, even if the later claims are based on different legal theories or seek dissimilar or additional relief.").

In support of his argument that the claims in this case involve different facts, Plaintiff cites to cases where courts found *res judicata* did not bar the plaintiffs' claims involving newly alleged facts of the defendants' fraudulent scheme of filing false and deceptive documents in the underlying debt collection proceedings.  (Pl.'s Opp'n 18 (first citing *Toohey*, 2016 WL 4473016,

at *5; and then citing *Michelo*, 419 F. Supp. 3d at 690).)[23]   Those cases can be distinguished because they involved significantly more voluminous allegations of fraud that revealed facts not present in the underlying debt-collection lawsuits.  *See Toohey*, 2016 WL 4473016, at *3–5 (*res judicata* did not apply because the plaintiff alleged the debt-buying company submitted affidavits without calculations in thousands of cases and prohibited the debt-buying company's law firm from directly contacting original creditors and debt sellers and, therefore, the debt-buying company's law firm "could not itself confirm the legitimacy or accuracy of any debt or amount claimed" in the state debt-collection action); *see also Michelo*, 419 F. Supp. 3d at 690 (*res judicata* did not apply because the plaintiff alleged that the defendants provided affidavits with deceptive statements revealing facts that "were not at all 'present in the [ ]' [foreclosure] proceeding" in at least six specific instances).  Although M&T Bank and the referee submitted affidavits in the State Court Action, unlike *Toohey* and *Michelo*, the accounting of the debt in this case was fully "revealed" on the record and Plaintiff could have challenged the accuracy of the calculations and final judgment amount in the State Court Action.  In addition, Plaintiff solely relies on the interest miscalculation by Defendants to allege fraud and then speculates about unlawful submissions in other state and federal court proceedings without providing any support.  (*See* Am. Compl. ¶ 14.)  Not only could Plaintiff have asserted these claims in defense

---

[23] Plaintiff also cites to *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV-99, 2017 WL 6757224, at *4 (S.D.N.Y. 2017).  In *Clark*, the plaintiff's cause of action based on allegedly false statements concerning interest owed in the state court action was barred by *res judicata*, but the plaintiff's cause of action asserting deceptive filings was not barred by *res judicata*.  *Id.*  The court in *Clark* found the claim was not barred by *res judicata* because the claim arose from facts unrelated to the defendants' right to collect on the underlying debt.  *Id.*  In contrast, Plaintiff has not alleged any facts in this case that are separate from Defendants' right to collect on the mortgage and the information in the M&T Bank's affidavits and referee's affidavit were on the record in the State Court Action.  Accordingly, *Clark* does not support Plaintiff's argument.

59

of the State Court Action where he was represented by counsel, Plaintiff filed a Notice of Claim in the State Court Action on September 6, 2018, (Notice of Claim to Surplus Monies), and then subsequently moved to confirm the Referee's Report of Sale. (Pl.'s Mot. to Confirm.) Thus, Plaintiff could have asserted all of his claims in the State Court Action as counterclaims because they are based on conduct revealed in the State Court Action.[24] *See De Masi*, 481 F. App'x at 646 ("[T]he district court correctly determined that [the plaintiff] was precluded from relitigating her claims in federal court because the New York Supreme Court had previously entered final judgment in three cases arising out of the same set of operative facts, namely, the . . . foreclosure on [the plaintiff's] home."); *Ank Bey El v. CitiMortgage, Inc.*, No. 25-CV-2317, 2025 WL 3552702, at *17 (E.D.N.Y. Dec. 11, 2025) (finding *res judicata* barred all of the plaintiff's

---

[24] Although New York State follows permissive counterclaim rules, "the Second Circuit has interpreted New York's *res judicata* law [ ] broadly to 'apply to all claims that could have been raised in a prior proceeding.'" *Bordonaro v. FCI Lender Servs., Inc.*, No. 22-CV-2545, 2025 WL 2753175, at *4 (E.D.N.Y. Sep. 28, 2025) (quoting *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed*, No. 20-1138 (2d Cir. Aug. 4, 2020)); *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 295 (E.D.N.Y. 2024) (holding plaintiff's claims for FDCPA, Truth in Lending Act ("TILA"), and GBL § 349 were based on the same facts as the underlying foreclosure action and were therefore barred by res judicata); *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-3783, 2020 WL 5658776, at *10 (E.D.N.Y. Sep. 23, 2020) ("To the extent [RICO and GBL § 349] claims were not raised in the state foreclosure actions, they could have been raised in those actions as they are part of the same transaction[] at issue there — [ ] the foreclosure of the property."); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding that the RICO, FDCPA, Consumer Fraud Protection Act, and Real Estate Settlement Procedure Act ("RESPA") claims asserted by the plaintiff "either were, or could have been, raised in the [foreclosure] [a]ction" and noting that "a later claim could have been raised in the prior action if it 'aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief'" (third and fourth alterations in original) (quoting *Segreto v. Town of Islip*, No. 12-CV-1961, 2013 WL 572435, at *11 (E.D.N.Y. Feb. 12, 2013))); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (finding the plaintiffs' RICO claims barred because they were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale").

claims which stemmed from the state court foreclosure action); *Massie*, 734 F. Supp. 3d at 201

(barring the plaintiff from raising claims that arose out of the same mortgage transaction as the

prior foreclosure action including claims premised on a "false affidavit" filed in the prior

foreclosure action because they could have been raised in that prior action); *Swiatkowski*, 745 F.

Supp. 2d at 172 (finding that the plaintiff's claims were or could have been brought in a state

court foreclosure action where the plaintiff's claims were based on "the allegation that [the]

defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale against [the plaintiff]");

*see also Fequiere*, 2016 WL 1057000, at *7 (finding that the plaintiff's claims alleging "that

[the] defendants improperly obtained [a] [f]oreclosure [j]udgment" were or could have been

brought in a state foreclosure action against her property); *Graham*, 156 F. Supp. 3d at 509

(collecting cases and finding that a plaintiff's claims were or could have been brought in a state

court foreclosure action because "New York courts have held that a defendant in a foreclosure

action should assert claims . . . [related to] the mortgage agreement as defenses against the

plaintiff lender in the original foreclosure action").

Accordingly, Plaintiff's claims against both SONYMA and M&T Bank, including claims

arising under the FDCPA, GBL § 349, RICO, *prima facie* tort, and conversion, and the

individual claim of unjust enrichment against SONYMA, are barred by res judicata.[25] *See*

*Burton*, 738 F. Supp. 3d at 295 (holding that *res judicata* barred the plaintiff's claims for

FDCPA, TILA, and GBL § 349 because they arose "out of the same transaction or series of

transactions" as the issue in the foreclosure action); *Pennicott v. JPMorgan Chase Bank, N.A.*,

---

[25] Because the Court finds that all of Plaintiff's claims against SONYMA and M&T Bank are barred by *res judicata*, the Court does not address the collateral estoppel arguments.

No. 21-CV-4575, 2022 WL 4226025, at *3 (S.D.N.Y. Sep. 13, 2022) (*res judicata* barred claims the plaintiff intended to assert for breach of fiduciary duty, accounting, conversion, constructive trust, replevin, intentional misrepresentation, and breach of contract because they could have been litigated in the foreclosure action); *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *12 (S.D.N.Y. Mar. 29, 2019) (holding the plaintiff's RICO, wire fraud and fraud and deceit, FDCPA, RESPA, TILA, and unjust enrichment claims were barred by *res judicata* because they were available to plaintiff in state foreclosure proceedings), *aff'd*, 820 F. App'x 20 (2d Cir. 2020).[26]

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions and dismisses the Amended Complaint.  In addition, the Court *sua sponte* dismisses the claims against Schiller Law.

Dated:  March 28, 2026
        Brooklyn, New York

SO ORDERED:

    /s/  MKB    <br>MARGO K. BRODIE<br>United States District Judge

---

[26]  The Court does not address the merits of Plaintiff's claims, or SONYMA's argument that the Court should dismiss Plaintiff's claims of GBL § 349, unjust enrichment, *prima facie* tort, and conversion because he failed to file a notice of claim, as required by General Municipal Law § 50-e, because each claim is barred by the applicable statute of limitations (FDCPA, GBL § 349, Judiciary Law § 487, RICO, negligence, gross negligence, legal malpractice, unjust enrichment, *prima facie* tort, and conversion) against all Defendants and *res judicata* bars all claims against SONYMA and M&T Bank.